No. 24-30775

In the United States Court of Appeals
for the Fifth Circuit

MARK WIGHTMAN, DOCTOR OF DENTAL SURGERY;
COURTNEY WIGHTMAN, DOCTOR OF DENTAL SURGERY;
WIGHTMAN FAMILY DENTAL, L.L.C.,

*Plaintiffs—Appellants*

v.

AMERITAS LIFE INSURANCE CORPORATION,

*Defendant—Appellee*

On Appeal from the
United States District Court
for the Eastern District of Louisiana
Civil Action No. 2:19-CV-11628
Honorable Carl J. Barbier, *Presiding*

BRIEF OF APPELLANTS

Kristin M. Lausten
(AR Bar No. 2011030)
(LA Bar No. 35510)
The Lausten Group, LLC
419 Carondelet Street, Suite 305
New Orleans, LA 70131
Telephone: 504.377.6585
klausten@thelaustengroup.com
*Counsel for Plaintiffs-Appellants*
  *Mark Wightman, D.D.S.,*
  *Courtney Wightman, D.D.S., and*
  *Wightman Family Dental, L.L.C.*

6/26/2025

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellants: | Counsel for Appellants: |
|---|---|
| Mark Wightman, D.D.S. | Kristin Lausten of The Lausten Group L.L.C. New Orleans, LA |
| Courtney Wightman, D.D.S. | Kristin Lausten of The Lausten Group L.L.C. New Orleans, LA |
| Wightman Family Dental, L.L.C. | Kristin Lausten of The Lausten Group L.L.C. New Orleans, LA |

| Appellee: | Counsel for Appellees: |
|---|---|
| Ameritas Life Insurance Corporation | George Fagan of Leake & Andersson, L.L.P. New Orleans, LA |

| Presiding Judges | |
|---|---|
| Honorable Carl J. Barbier | United States District Court Judge |
| Honorable Dana Douglas | Magistrate Judge |

*/s/ Kristin M. Lausten*
Kristin M. Lausten
*Counsel for Plaintiffs-Appellants*
  *Mark Wightman, D.D.S.,*
  *Courtney Wightman, D.D.S., and*
  *Wightman Family Dental, L.L.C.*

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs-Appellants Mark Wightman, D.D.S., Courtney Wightman, D.D.S., and Wightman Family Dental, L.L.C. ("Providers") respectfully request oral argument. This is the second appeal taken in this matter and involves factually and legally complex issues. Although each issue is fact-intensive, as in any other ruling, they raise important legal questions of broader application beyond this case. Counsel believes oral argument would assist the Court navigating the record and resolving the legal issues arising herein.

## TABLE OF CONTENTS

*CERTIFICATE OF INTERESTED PERSONS* ................................. ii

*STATEMENT REGARDING ORAL ARGUMENT* ......................... iii

*TABLE OF CONTENTS* ...................................................................iv

*TABLE OF AUTHORITIES* ........................................................ ix

*JURISDICTIONAL STATEMENT* ................................................. 1

*ISSUES PRESENTED FOR REVIEW* ............................................ 2

*STATUTES AND REGULATIONS INVOLVED* ............................. 4

*STATEMENT OF THE CASE* ........................................................ 5

    **I.   Introduction** .......................................................................5

    **II.  Facts** ...................................................................................8

       A.  The Parties .....................................................................8

       B.  The Contracts at Issue ....................................................8

    **III. The Proceedings** .............................................................9

       A.  Wightman I ....................................................................9

          1.  The Claims ...............................................................9

          2.  Summary Judgment ...............................................11

          3.  On Appeal from the Dismissal of Claims...................11

          4.  Intervening Developments in the Law .....................12

             a.  *Wightman v. Ameritas Life Ins. Corp.*,
                 2022-00364 (La. 10/21/22), 351 So. 3d 690 ...........12

             b.  *Williams v. BestComp, Inc.*,
                 2022-00100 (La. 12/09/22); 354 So. 3d 1211 .........12

          5.  The Fifth Circuit's Mandate
             Following the LASC's Ruling....................................13

       B.  Wightman II....................................................................13

          1. Procedural Background on Remand............................13

          2. The Claims on Remand.............................................14

a.  Ameritas's Coordinated Scheme
to Underpay Providers ........................................... 14

b.  Misrepresentations and Damage
to Provider-Patient Relationships ........................ 16

c.  Automated Claims Manipulation ........................ 16

d.  Violations of Contractual, Statutory,
and Tort Duties .................................................... 17

3. Ameritas's Renewed Motion for
Summary Judgment on Remand ................................. 19

4. Provider Opposition .................................................... 20

5. Ameritas's Reply in Support of its
Motion for Summary Judgment ................................. 21

6. The Court's Ruling ...................................................... 22

**SUMMARY OF THE ARGUMENT** ....................................................... **24**

**STANDARD OF REVIEW** ..................................................................... **28**

**ARGUMENT** ........................................................................................ **29**

I.   **Introduction And Governing
Principles Of Statutory Interpretation** ........................... **29**

A.  The Central Question: Can Louisiana Law
be Interpreted to Exclude Dental Providers from
Statutory PPO Authorizations and Protections? ........... 29

B.  Louisiana Law Prohibits Discrimination
Against Dental Providers ............................................... 31

C.  Statutory Text Controls: The PPO Act's
Language Forecloses Ameritas's Position ...................... 32

D.  Statutory Placement Reinforces
the PPO Act's Inclusive Purpose ................................... 34

II.  **The PPO Act's Text Is Dispositive:
Licensed Dental Providers Are "Providers"
Under The PPO Act** ............................................................. **35**

A.  The PPO Act's Broad Definition of "Provider"
Includes Licensed Dental Providers ............................. 35

B.  Functional Terminology in the PPO Act
Supports the Inclusion of Dental Providers ..................36

C.  Undisputed Facts Confirm the Applicability
of the PPO Act to Dental Providers and
Dental Services...............................................................37

D.  The PPO Act Contains No Express
or Implied Exclusions....................................................38

E.  A Narrow Reading Conflicts with the
PPO Act's Non-Discrimination Clause ..........................38

F.  Louisiana Jurisprudence and the
Attorney General Have Rejected Attempts
to Narrow the Definition of "Provider" ..........................39

G.  Extratextual Sources Confirm
What the PPO Act Already Says....................................40

**III. Harmonizing Functional Terminology
Across Louisiana's Healthcare Statutes
Confirms PPO Act Coverage ................................................40**

A.  Louisiana Recognizes Dental Providers
as "Physicians" and "Healthcare Providers"
Delivering "Healthcare" and "Medical Services" ...........40

B.  Licensing Boards Do Not Determine Provider
Status Under the PPO Act .............................................42

C.  Dental Providers and Physicians are
Subject to the Same State and
Municipal Regulations ...................................................43

D.  "Dental Services" Constitute Ordinary
Medical Services.............................................................44

E.  Medical Claim and Prompt Pay Protections
Apply to Dental Providers..............................................45

**IV. PPO Structures, Benefit Cards, and
Payment Obligations Under Louisiana Law ...................46**

A.  PPOs Are Legally Distinct from Provider Networks.....46

B.  Insurer Identification and Benefit Card
Requirements Enforce Transparency ............................ 48

C.  Discount Medical Plans Are Not PPOs ......................... 49

D.  Dental Service Plans Qualify as
Health and Accident Policies ........................................ 50

V.  **Ameritas Formed A PPO And Qualifies As A "Group
Purchaser" Under Louisiana Law** ..................................... **50**

A.  Ameritas's Network Lease Agreement
with DenteMax Formed or Established a PPO ............. 50

B.  Ameritas Qualifies as a "Group Purchaser"
or "Deemed Group Purchaser" ..................................... 52

C.  Ameritas Assumed Operational Control
and Payment Obligations .............................................. 52

VI. **Ameritas's Invocation of the PPO Act's
Statutory Exemption Clause Reveals a
Fatal Inconsistency** ................................................................ **53**

VII. **Ameritas's Attempt to Evade Statutory
Damages is Foreclosed by the PPO Act
and Binding Precedent** ......................................................... **54**

A.  The PPO Act Imposes Liability for
Discounting Without Disclosure ................................... 54

B.  PPO Act Remedies Are Contractual
and Subject to a Ten-Year Prescriptive Period ............. 55

VIII.   **The PPO Act And The NLA Operate
Concurrently To Regulate Different
Phases Of Provider-Payor Relationships** .......................... **56**

A.  The PPO Act Regulates Conduct at the
Time of Service and Provides Direct Remedies ............. 56

B.  The NLA Regulates Contract Formation
and Delegates Enforcement to the Insurance
Commissioner ................................................................ 56

C.  The Legislative Record Confirms the
PPO Act Continues to Apply to Dental Providers ......... 58

D.   The Court's Application of the NLA
to Divest the Providers of Vested Claims
Was Legal Error ............................................................. 59

E.   Ameritas Remains Bound by the PPO Act,
Regardless of the NLA .................................................. 59

IX. **The District Court Erroneously Rejected
the Providers' Arguments on Remand
and Improperly Denied Amendment and
Reconsideration** ................................................................. **60**

A.   The District Court Misconstrued
the Scope of the Providers' Claims ................................ 60

B.   The District Court Abused its Discretion
by Denying Leave to Amend, Rejecting Claims
Tried by Consent, and Denying Reconsideration .......... 61

*CONCLUSION* ....................................................................... *62*

*CERTIFICATE OF SERVICE* ............................................. *64*

*CERTIFICATE OF COMPLIANCE* .................................... *65*

# TABLE OF AUTHORITIES

**Federal Cases**                                                              **Page(s)**

*Austin v. Kroger Tex., L.P.,*
   864 F.3d 326, 329 (5th Cir. 2017) ......................................28

*Cent. Crude, Inc. v. Liberty Mut. Ins. Co.,*
   51 F.4th 648, 652-53 (5th Cir. 2022) ...............................28

*Cf. Rotkiske v. Klemm,*
   589 U.S. 8, 140 S. Ct. 355, 360-61, 205 L. Ed. 2d 291 (2019) ...........38

*CIGNA Healthplan v. La. ex rel. Ieyoub,*
   82 F.3d 642, 645 (5th Cir. 1996) ......................................38

*Erie R.R. Co. v. Tompkins,*
   304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938) ............................28

*Lion Elastomers, L.L.C. v. NLRB,*
   108 F.4th 252, 257 (5th Cir. 2024) ...............................28

*Rogers v. Bromac Title Servs., L.L.C.,*
   755 F.3d 347, 350 (5th Cir. 2014) ....................................28

*Stem v. Gomez,*
   813 F.3d 205, 209, 215 (5th Cir. 2016) ......................................28, 61

*Stenberg v. Carhart,*
   530 U.S. 914, 942, 120 S. Ct. 2597, 147 L. Ed. 2d 743 (2000) ...........36

## Louisiana State Cases                                                   Page(s)

*Alford v. Dean Witter Reynolds, Inc.*,
    975 F.2d 1161, 1163 (La. App. 5th Cir. 1992) ........................................ 61

*Anderson v. Ochsner Health Sys.*,
    2013-2970 (La. 07/01/14), 172 So. 3d 579, 584, 585 .......................... 57, 58

*Cole v. Celotex Corp.*,
    599 So. 2d 1058 (La. 1992) ................................................................. 59

*Int'l Paper Co. v. Hilton*,
    2007-0290, 966 So. 2d 545, 555 (La. 2007) ........................................ 40

*Portis v. First Nat'l Bank of New Albany, Miss.*,
    34 F.3d 325, 331 (La. App. 5th Cir. 1994) ........................................... 61

*Singleton v. Wulff*,
    428 U.S. 106, 120, 96 S. Ct. 2868, 2877, 49 L. Ed. 2d 826 (1976) ............ 61

*Wightman v. Ameritas Life Ins. Corp.*,
    2022-00364 (La. Oct. 21, 2022), 351 So.3d 690 ........................... *passim*

*Williams v. BestComp, Inc.*,
    No. 22-00100 C/W No. 22-00113 (La. Dec. 9, 2022); 2022 La. LEXIS
    2110 ........................................................................................... *passim*

**Federal Rules**                                                    **Page(s)**

Fed. R. App. P. 32 ........................................................................65

**5th Circuit Rules**                                                **Page(s)**

5th Cir. R. 32 ...............................................................................65

**Louisiana Statutes**                                               **Page(s)**

La. Rev. Stat. § 4:183 ..................................................................45

La. Rev. Stat. § 9:153 ..................................................................48

La. Rev. Stat. § 9:315 ..................................................................45

La. Rev. Stat. § 9:358.4 ...............................................................45

La. Rev. Stat. § 9:2797 ................................................................41

La. Rev. Stat. § 9:2799.5 .............................................................41

La. Rev. Stat. § 9:3879 ................................................................45

La. Rev. Stat. § 9:4751 ................................................................41

La. Rev. Stat. § 9:5628 ................................................................41

La. Rev. Stat. § 13:124 ................................................................45

La. Rev. Stat. § 13:352 ................................................................45

La. Rev. Stat. § 13:691 ................................................................45

La. Rev. Stat. § 13:3734 ..............................................................41

La. Rev. Stat. § 14:34.8 ...............................................................41

La. Rev. Stat. § 15:705 ................................................................45

La. Rev. Stat. § 15:773 ................................................................45

La. Rev. Stat. § 15:831 ................................................................45

La. Rev. Stat. § 17:2149 ..............................................................45

La. Rev. Stat. § 17:3082 ..............................................................45

La. Rev. Stat. § 17:3312 ..............................................................45

La. Rev. Stat. §§ 22:47-48 ...........................................................48

La. Rev. Stat. § 22:242 ..........................................................40, 41

La. Rev. Stat. § 22:984 ............................................................. 18, 48

La. Rev. Stat. § 22:1007 .................................................................. 40

La. Rev. Stat. § 22:1009 ............................................................ 41, 48

La. Rev. Stat. §§ 22:1019.1 ........................................... 32, 41, 47, 48

La. Rev. Stat. §§ 22:1019.1-1019.2 ................................................. 47

La. Rev. Stat. § 22:1020.62 .................................................. 40, 41, 48

La. Rev. Stat. § 22:1021 ............................................................ 31, 32

La. Rev. Stat. § 22:1026 .................................................................. 45

La. Rev. Stat. § 22:1027 .................................................................. 41

La. Rev. Stat. § 22:1040 .................................................................. 41

La. Rev. Stat. § 22:1151 ................................................. 17, 18, 20, 50

La. Rev. Stat. § 22:1152 ................................................. 17, 18, 20, 50

La. Rev. Stat. § 22:1154 ............................................................ 18, 50

La. Rev. Stat. § 22:1155 .................................................................. 18

La. Rev. Stat. § 22:1156 .................................................................. 18

La. Rev. Stat. § 22:1157.1 ......................................................... 17, 18, 20

La. Rev. Stat. §§ 22:1171-1172 ............................................... *passim*

La. Rev. Stat. § 22:1213 .................................................................. 45

La. Rev. Stat. § 22:1260.1 .......................................................... 20, 49

La. Rev. Stat. § 22:1260.2 ...................................................... 41, 47, 49

La. Rev. Stat. § 22:1260.3 .......................................................... 20, 49

La. Rev. Stat. § 22:1260.4 .......................................................... 20, 49

La. Rev. Stat. § 22:1260.5 .......................................................... 20, 49

La. Rev. Stat. § 22:1260.6 .......................................................... 20, 49

La. Rev. Stat. § 22:1260.7 .......................................................... 20, 49

La. Rev. Stat. § 22:1260.8 .......................................................... 20, 49

La. Rev. Stat. § 22:1260.9 .......................................................... 20, 49

La. Rev. Stat. § 22:1260.10 ......................................................... 20, 49

La. Rev. Stat. § 22:1260.11 ...............................................20, 49

La. Rev. Stat. § 22:1260.41 ...............................................41

La. Rev. Stat. §§ 22:1821-1838 ...........................................18, 20

La. Rev. Stat. § 22:1831 ................................. 18, 20, 41, 45, 48, 50

La. Rev. Stat. §§ 22:1832-1838 ...........................................18, 20, 45

La. Rev. Stat. § 22:1871-1881 ............................................20

La. Rev. Stat. § 22:1872 .................................................20, 32, 41

La. Rev. Stat. § 22:1874 .................................................20, 46, 56

La. Rev. Stat. § 22:2392 .................................................41

La. Rev. Stat. § 23:1021 .................................................41

La. Rev. Stat. § 23:1203 .................................................45

La. Rev. Stat. § 29:762 ..................................................41

La. Rev. Stat. § 37:612 ..................................................43

La. Rev. Stat. § 37:751 .................................................37, 41-43

La. Rev. Stat. § 37:771 ..................................................42

La. Rev. Stat. § 37:772 .................................................41-42

La. Rev. Stat. § 37:773 .................................................41, 44

La. Rev. Stat. § 37:793 ..................................................41

La. Rev. Stat. § 37:794 ..................................................41

La. Rev. Stat. § 37:796 .................................................41, 42

La. Rev. Stat. § 37:796.1 ...............................................41, 42

La. Rev. Stat. § 37:914 ..................................................43

La. Rev. Stat. § 37:962 ..................................................43

La. Rev. Stat. § 37:1042 .................................................43

La. Rev. Stat. § 37:1104 .................................................43

La. Rev. Stat. § 37:1262 .................................................42

La. Rev. Stat. § 37:1263 .................................................19, 43

La. Rev. Stat. § 37:1701 .................................................41

La. Rev. Stat. § 37:1745 ...................................................................41

La. Rev. Stat. §§ 37:1745.11-1745.17 ...........................................44

La. Rev. Stat. § 37:1746 ...................................................................41

La. Rev. Stat. § 37:1751 ...................................................................41

La. Rev. Stat. § 39:1556 ...................................................................41

La. Rev. Stat. § 40:5.11 ....................................................................44

La. Rev. Stat. § 40:31.63 .............................................................41, 44

La. Rev. Stat. §§ 40:961-996.7 .....................................................41, 44

La. Rev. Stat. §§ 40:1001-1014 ....................................................41, 44

La. Rev. Stat. §§ 40:1157.1-1157.3 ..............................................41, 44

La. Rev. Stat. § 40:1161.1 .................................................................44

La. Rev. Stat. §§ 40:1165.1 ..............................................................41

La. Rev. Stat. §§ 40:1165.1-1165.3 ..................................................44

La. Rev. Stat. § 40:1223.3 .................................................................41

La. Rev. Stat. §§ 40:1231.1-1231.10 ............................................41, 44

La. Rev. Stat. § 40:1233.1 .................................................................42

La. Rev. Stat. § 40:1235.1 .................................................................42

La. Rev. Stat. § 40:1237.1 ...........................................................41, 42

La. Rev. Stat. § 40:1250.31-1250.32 ................................................44

La. Rev. Stat. § 40:2017 ...................................................................44

La. Rev. Stat. § 40:2114 ...................................................................42

La. Rev. Stat. § 40:2144 ...................................................................41

La. Rev. Stat. §§ 40:2201-40:2210 ........................................... *passim*

La. Rev. Stat. § 45:844.12 .................................................................45

La. Rev. Stat. § 46:158 .....................................................................32

La. Rev. Stat. § 46:460.51 .................................................................41

La. Rev. Stat. § 46:2622 ...................................................................42

La. Rev. Stat. § 47:305 ................................................................41, 44

La. Rev. Stat. §§ 51:1401-1429..................................................18

**Louisiana Civil Code**                                    **Page(s)**

La. Civ. Code art. 9 ...........................................................33

La. Civ. Code art. 13 .........................................................40

La. Civ. Code art. 1967 ......................................................18

La. Civ. Code art. 2298 ......................................................18

La. Civ. Code art. 2315 ......................................................18

La. Civ. Code art. 2316 ......................................................18

La. Civ. Code art. 2322.1 ...................................................41

**Other Authorities**                                       **Page(s)**

Acts 1999, No. 1274, § 2 ...................................................51

# JURISDICTIONAL STATEMENT

The district court had diversity jurisdiction under 28 U.S.C. § 1332. Supplemental jurisdiction existed over all state law claims, under 28 U.S.C. §1367(a).

On November 14, 2024, the court issued a final order and judgment dismissing the claims of Plaintiffs-Appellants Mark Wightman, D.D.S., Courtney Wightman, D.D.S., and Wightman Family Dental, L.L.C. ("Providers") with prejudice.[1] The Providers filed a timely notice of appeal on December 12, 2024.[2] The Providers also filed a motion for reconsideration,[3] which was denied.[4] The Providers filed a timely amended notice of appeal on February 19, 2025.[5]

This Court has jurisdiction under 28 U.S.C. § 1291.

---

[1] ROA.2675-86.
[2] ROA.2753-54.
[3] ROA.2769-2811, 2839-40.
[4] ROA.2860-66.
[5] ROA.2867-68.

## ISSUES PRESENTED FOR REVIEW

1. Whether the court violated the Fifth Circuit's mandate by treating the prescription ruling as a limitation on remand and failing to adjudicate preserved claims acknowledged—but not resolved—on appeal.

2. Whether the court erred in invoking judicial estoppel to reject the Providers' arguments as "novel" or "inconsistent" with prior positions, despite intervening law and the need for factfinding on remand.

3. Whether the court erred in dismissing the Providers' PPO Act claims—and related state-law claims—without drawing all reasonable inferences in the Providers' favor.

4. Whether the court erred by failing to interpret the governing contracts in accordance with Louisiana law and the applicable statutory and regulatory framework.

5. Whether the Louisiana Preferred Provider Organization Act, La. R.S. §§ 40:2201–2210, applies to dental providers and dental services, given the Act's broad definition of "provider," its anti-discrimination clause, and Louisiana's recognition of dental providers and dental care on par with physicians and medical care.

6. Whether DenteMax's Provider Network Agreement qualifies as a "preferred provider organization agreement" or a "discount medical plan," given DenteMax's limited role as a network administrator and undisputed evidence that it is not an insurer, did not pay or process claims, and did not provide tangible benefits as required by law to constitute a PPO Agreement.

7. Whether Ameritas's Participating Provider Organization Lease Agreement created express or implied obligations under the PPO Act and Louisiana contract or tort law.

8. Whether Ameritas's Lease Agreement qualifies as a "preferred provider organization agreement" under the PPO Act, given undisputed evidence that it provided tangible benefits to the Providers.

9.  If so, whether Ameritas qualifies as a "group purchaser" or "deemed group purchaser" under the PPO Act by virtue of its leased access to the DenteMax Provider Network and application of discounts to the Providers' claims without notice.

10. If so, whether Ameritas can be held liable for statutory damages and attorney fees under the PPO Act.

11. Whether the court erred in relying on the 2021 Network Leasing Act to reinterpret and narrow the scope of the earlier-enacted PPO Act, contrary to settled canons of statutory construction.

12. Whether the court erred in failing to interpret the PPO Act and the NLA in harmony with Louisiana's integrated regulatory framework governing healthcare and insurance, including Title 22 (Insurance Code), Title 37 (Professions and Occupations), Title 40 (Public Health and Safety), the Civil Code, and the Administrative Code.

13. Whether the court abused its discretion in denying leave to amend the complaint on remand to incorporate newly discovered evidence, clarify claims, and conform the pleadings to intervening developments in the law.

14. Whether the court erred in denying the Providers' motion for reconsideration.

## STATUTES AND REGULATIONS INVOLVED

The text, with appropriate citation, of any significant rule of law, including any constitutional provision, treaty, statute, ordinance, regulation, rule, or guideline is set forth in an addendum to this brief.

# STATEMENT OF THE CASE[6]

## I.  INTRODUCTION

In 1968, the federal government mandated all new cars be equipped with seatbelts to protect passengers. Decades later, airbags were introduced as an additional safety measure. While both serve complementary functions, one might argue—incorrectly—that the introduction of airbags means seatbelts were never intended to protect passengers in the first place. By that logic, the development of a new safety measure nullifies the purpose of an earlier one. Yet both remain in place today—not because one supplanted the other, but because each serves a distinct and complementary purpose in reducing harm. Their coexistence reflects a layered approach to regulation.

The Louisiana Legislature adopted a similar approach to regulating insurer-provider relationships. In 1984, it enacted the Preferred Provider Organization Act ("PPO Act"), La. R.S. 40:2201-

---

[6] Terms and Definitions:

  The author may have removed extraneous, non-substantive material like brackets, quotation marks, ellipses, footnote references, and internal citations; may have changed capitalization without using brackets to indicate those changes; and affirmatively represents that the alterations were made solely to enhance readability and that quotations and cited material otherwise faithfully reproduces the referenced text.

  Use of the term "Ameritas" throughout this brief refers to Ameritas as Ameritas Life Insurance Corp. ("ALIC") and Ameritas Life Insurance Corp. of New York ("Ameritas NY") and its "Strategic Alliances" defined as "any licensed insurer, other than an Affiliate of Ameritas, that, pursuant to a written agreement between Ameritas and such insurer: (a.) has the right to access [DenteMax's] network of Participating Providers for the Programs it insures, subject in all cases to the terms and conditions of this Agreement; and (b.) directly or indirectly uses Ameritas's claim system to process all dental claims incurred in connection with a Program issued or administered by such insurer. *See* ROA.2359, ¶ 1.16.

2210, to govern time-of-service disclosures and post-service payment obligations. In 2021, it enacted the Network Leasing Act ("NLA"), La. R.S. 22:1171–1172, to regulate the formation and content of pre-service dental network agreements. These statutes address distinct stages of the same relationship and were designed to operate in concert—not conflict.

The district court erred by treating the NLA's 2021 enactment as evidence that the 1984 Legislature never intended for the PPO Act's authorizations and protections to encompass dental providers.[7] Reexamining its pre-remand interpretation[8] in light of the NLA, and citing perceived ambiguity in the term "medical services," the court reversed itself, and concluded that dental services were never intended to fall within the PPO Act's scope.[9]

Based on that flawed logic, the court further held that dentists are not "health care providers," that "dental services" are not "medical services" under the Act,[10] that agreements involving dental services cannot qualify as PPO agreements, and that insurers or payors of dental claims cannot be "group purchasers" or "deemed group purchasers" under the Act.[11]

But just as seatbelts and airbags coexist by design, so too do the PPO Act and the NLA. Enacted nearly four decades apart, these

---

[7] ROA.2682-84
[8] ROA.283-293.
[9] ROA.2675-2685.
[10] ROA.2681-82.
[11] ROA.2684.

statutes regulate distinct aspects of insurer-provider relationships.[12] By treating the NLA's 2021 enactment as evidence that the 1984 Legislature intended to exclude dental providers from the PPO Act all along, the court violated the canon of *in pari materia* and manufactured a discriminatory exclusion unsupported by the text or legislative history of either statute.

That interpretation denies dentists the same statutory protections afforded to other licensed healthcare providers—despite Louisiana's longstanding recognition that licensed dentists are healthcare providers who render medical services on par with licensed physicians.[13] It strips an entire class of providers of equal rights under the law—not by legislative act, but by judicial inference. This is not statutory interpretation; it is statutory erasure, resulting in a judicially imposed inequity that the PPO Act's plain language does not permit.

This appeal presents straightforward questions of statutory interpretation: What do the PPO Act's terms—such as "provider," "healthcare services," "medical services," "group purchaser," and "network"—mean within the context of the statute? Can they be read coherently with Louisiana's broader legal framework, including the later-enacted NLA? And does the NLA's passage reflect the 1984 Legislature's intent to exclude dental services from the PPO Act's reach—regardless of the provider's licensure?

---

[12] *See infra* Arg., VIII.
[13] *See infra* Arg., III.

Answering these questions requires more than a narrow reading of isolated terms. It demands a holistic, common-sense construction grounded in Louisiana's integrated body of law, including Title 22 (Insurance Code), Title 37 (Professions and Occupations), Title 40 (Public Health and Safety), the Civil Code, and the Administrative Code.

## II.  FACTS

### A. The Parties

Plaintiffs-Appellants Mark Wightman, D.D.S., and Courtney Wightman, D.D.S., are licensed doctors of dental surgery.[14] Wightman Family Dental, L.L.C., is a Louisiana-licensed entity authorized to provide dental services (collectively, "Providers").[15]

Defendant-Appellee Ameritas Life Insurance Corp. is a Nebraska corporation.

### B. The Contracts at Issue

On February 16, 2009, the Providers and DenteMax, L.L.C.—a former defendant, not party to this appeal—entered into a "Provider Service Agreement," whereby DenteMax agreed to include the Providers in its "Preferred Provider Network,"[16] "provide administrative duties in the maintenance of the network,"[17] and "market it to groups and individuals" ("Provider Network Agreement").[18]

---

[14] ROA.2501-02.
[15] ROA.2502.
[16] ROA.2355-56.
[17] ROA.2355, § II, ¶ 1; ROA.2356, § II, ¶ 1.
[18] ROA.2355, § II, ¶ 2; ROA.2356, § II, ¶ 2.

On May 1, 2012, Ameritas and DenteMax executed a
"Participating Provider Organization Network Agreement," which
granted Ameritas access to the DenteMax provider network
("Participating Provider Organization Network Lease Agreement" or
"Network Lease Agreement").[19]

On May 27, 2016, the Providers executed a "Participating Dentist
Agreement," which placed them in Stratose's "Participating Dentist
Network" and expressly stated that Stratose is "not a payor,
administrator, insurer, underwriter, or guarantor of payment."[20]

This lawsuit arises from these agreements.

III.  THE PROCEEDINGS

    A. Wightman I

        1.  The Claims

On July 11, 2019, the Providers filed their original complaint
against Ameritas and DenteMax, asserting claims under Louisiana
contract and tort law, including breach of contract, improper claims
handling, and unjust enrichment.[21] Ameritas and DenteMax filed
separate Rule 12(b)(6) motions to dismiss, which the district court
granted in part and denied in part.[22]

---

[19] ROA.2357-91.
[20] ROA.2573-86.
[21] ROA.30-39.
[22] ROA.1484-95; s*ee also* ROA.1543, n.2 ("Specifically, the district court: (1)
    determined that dentists were healthcare providers within the meaning of the
    statute; (2) determined the exemption provision in La. Rev. Stat. § 40:2203.1(A)
    did not apply to DenteMax; and (3) found that Wightman had failed to allege
    contractual privity between themselves and Ameritas, thus, Ameritas could not
    be a "group purchaser" under the language of La. Rev. Stat. § 40:2202(3).
    However, the district court also noted that, "under a plain reading of La. R.S.

The court determined that "a straightforward analysis of the statutory language of 40:2201.1(6)(A) [*sic.*] necessitates a conclusion that dentists are health care providers,"[23] citing an Attorney General advisory opinion that "explicitly states that dentists are 'providers' under 40:2201.1(6)(A) [*sic.*],"[24] and that Ameritas could be deemed a group purchaser under 40:2203.1(G).[25] That interlocutory ruling, which the court subsequently reversed on remand, was not appealed.

The Providers filed two amended complaints and converted the case into a putative class action.[26] Their Second Amended Class Complaint ("Operative Complaint") alleged that Ameritas applied improper discounts through undisclosed third-party network leases,[27] made false and misleading statements regarding coverage and applicable fee schedules,[28] and failed to reimburse valid claims based on the benefit plans identified at the time of service.[29] The Providers asserted claims for statutory damages and attorneys' fees under La.

---

40:2203.1, Ameritas could be 'deemed' a group purchaser 'for purposes of this Section' under La. R.S. 40:2203.1(B)(4)").

[23] ROA.287.

[24] ROA.287 (*citing* La. Atty. Gen. Op. No. 94-313 (La. A.G. 1994), 1994 WL 553063).

[25] ROA.294-95; *see also* ROA.1486, n.2 ("Under a plain reading of La. R.S. 40:2203.1, Ameritas could be 'deemed' a group purchaser 'for purposes of this Section' under La. R.S. 40:2203.1(B)(4).").

[26] ROA.352-69, 697-722.

[27] ROA.700-01, ¶¶ 15-20; ROA.705-06, ¶ 31; ROA.710, ¶¶ 43-45; ROA.711-12, ¶¶ 47-49, 51.

[28] ROA.700, ¶ 16; ROA.701, ¶¶ 17, 20; ROA.705-06, ¶ 31; ROA.710, ¶¶ 43-45; ROA.711-12, ¶¶ 47-49, 51-52; ROA.714, ¶58.

[29] ROA.701, ¶ 17; ROA.705-06, ¶ 31; ROA.711-12, ¶¶ 47-49. *See also* ROA.2563, ¶¶ 12-16; ROA.2566, ¶¶ 12-16; ROA.2568-570, ¶¶ 3-19.

R.S. 40:2203.1(G),[30] breach of contract, unjust enrichment,[31] and injunctive relief.[32]

### 2.    Summary Judgment

Ameritas again moved to dismiss, asserting for the first time that the Providers' claims were prescribed under Louisiana law.[33] Ameritas also filed a motion for partial summary judgment on the claims for unjust enrichment and injunctive relief.[34] On October 27, 2020, the court granted the motions and dismissed the Providers' claims.[35]

### 3.    On Appeal from the Dismissal of Claims

The Providers appealed to the United States Court of Appeals for the Fifth Circuit,[36] arguing that the court failed to consider the governing contracts and record evidence, and disregarded their claims concerning Ameritas's breach of contract, undisclosed network leasing, improper claims processing and reimbursement practices, and violations of interrelated laws regulating insurer conduct, disclosure

---

[30] ROA.713-14, ¶¶ 54-61; ROA.719-20, ¶¶ III(A), III(D).

[31] ROA.717, ¶¶ 71-72; ROA.719, ¶ III(B) (As to unjust enrichment, the Providers alleged that "as a result of Ameritas' relationship with Putative Class Representatives and the members of Class 2, including Ameritas' actions in compensating Providers based on alternative rates that it leased from Third-Party PPO Lessors, Ameritas was unjustly enriched and Putative Class Representatives and the members of Class 2 were impoverished" and that they were "entitled to recover the value of the enrichment or the impoverishment.").

[32] ROA.717-18, ¶¶ 73-74; ROA.719, ¶ III(C).

[33] ROA.737-831; *see also* ROA.1487-88.

[34] ROA.1038-92.

[35] ROA.1484-95.

[36] ROA.1516-18.

obligations, and reimbursement standards—duties that operate in concert with the PPO Act.[37]

   During the pendency of that appeal, the Fifth Circuit certified a question to the Louisiana Supreme Court ("LASC") regarding the applicable prescriptive period for PPO Act claims.[38]

### 4.   Intervening Developments in the Law

#### a.   *Wightman v. Ameritas Life Ins. Corp.*, 2022-00364 (La. 10/21/22), 351 So. 3d 690

On October 21, 2022, the LASC issued a decision aligning with the Providers' arguments on appeal, holding that because "claims under La. R.S. 40:2203.1 arise out of preferred provider organization contracts, the applicable liberative prescriptive period is ten years, as stated in La. C.C. art. 3499."[39] The LASC also identified several factual predicates relevant to determining whether the PPO Act applies in this case.[40]

#### b.   *Williams v. BestComp, Inc.*, 2022-00100 (La. 12/09/22); 354 So. 3d 1211

In *Williams v. BestComp, Inc.*, the LASC further clarified that group purchaser status under the PPO Act turns on contractual function. It confirmed that third-party entities applying provider discounts through a network lease can be held liable under the Act if they fail to meet statutory disclosure requirements.[41]

---

[37] *Wightman v. Ameritas Life Insurance Corp.*, No. 21-30148, DCN No. 28 (La. App. 5th Cir. 03/02/22).
[38] *Id.* at DCN No. 00516221220.
[39] *Wightman v. Ameritas Life Ins. Corp.*, 2022-00364 (La. 10/21/22), 351 So. 3d 690, 691 (cleaned up).
[40] *Id.* at 694.
[41] *Williams v. BestComp, Inc.*, 2022-00100 (La. 12/09/22), 354 So. 3d 1211, 1217-19.

### 5. The Fifth Circuit's Mandate Following the LASC's Ruling

On April 13, 2023, the Fifth Circuit reversed the court's dismissal of the Providers' claims and remanded the case for further proceedings.[42]

## B. Wightman II

### 1. Procedural Background on Remand

On July 7, 2023, the Providers moved for a status conference to discuss issues on remand, including a discovery schedule and the filing of an amended complaint.[43] On September 27, 2023, the court denied leave to amend and ordered the parties to submit a joint status report identifying the claims, proposed amendments, and legal and factual issues on remand.[44]

In the Joint Status Report,[45] and in subsequent filings—including the Providers' September 10, 2024, *Opposition to Ameritas's Request to Refile its Motion for Summary Judgment*,[46] their October 24, 2024, *Opposition to Ameritas's Renewed Motion for Summary Judgment*,[47] their October 24, 2024, *Motion for Leave to File an Amended Complaint*,[48] their October 25, 2024, *Notice of Preservation of Rights*,[49] their December 19, 2024, *Motion for Reconsideration*,[50] and their

---

[42] ROA.1539-46.
[43] ROA.1547-48.
[44] ROA.1641-42.
[45] ROA.1955-76.
[46] ROA.1977-86.
[47] ROA.2290-586.
[48] ROA.2595-601.
[49] ROA.2620-21.
[50] ROA.2769-811; *see also* ROA.2839-40 (considering ROA.2769-811 as the operative request for reconsideration).

January 20, 2025, *Reply in Support of Reconsideration*[51]—the Providers reaffirmed their core claims. These included Ameritas's breach of contract, undisclosed network leasing, improper claims processing and reimbursement practices, misrepresentations, and violations of numerous state laws regulating insurer conduct, disclosure obligations, and reimbursement standards—duties that operate in concert with the PPO Act.

Ameritas opposed an amendment[52] as futile,[53] reliant on discovery beyond pre-remand discovery deadlines,[54] and previously denied by the court.[55]

The court deferred the issue, stating it would consider the proposed amendments in the context of Ameritas's summary judgment motion.[56]

### 2. The Claims on Remand

#### a. Ameritas's Coordinated Scheme to Underpay Providers

In the post-remand record, the Providers expounded upon their core claims, alleging that Ameritas coordinated with other entities, insurers, and payors in the insurance market[57] who aided and abetted

---

[51] ROA.2850-59.

[52] ROA.2670-71, 2639-52.

[53] ROA.2646-47; ROA.1978; ROA.1984, ¶ 3.

[54] ROA.2641.

[55] ROA.1984, ¶ 4; ROA.1641-42.

[56] ROA.1987.

[57] ROA.2297-99 (Through post-remand discovery, the Providers learned that Ameritas, Reliance Standard, First Reliance Standard, Standard Insurance, The Standard LIC NY, DenteMax, Stratose, and other undisclosed entities were involved in this scheme. Ameritas has refused to identify or produce copies of agreements between Ameritas and its "Affiliates", "Clients", "Program"

each other in a scheme to systematically obstruct, reduce, delay, and deny reimbursements to licensed dental providers through undisclosed third-party arrangements in violation of Louisiana law.[58]

This scheme enabled Ameritas to exploit the Providers' service agreements—without their knowledge[59]—to avoid paying out-of-network rates[60] for services rendered,[61] often to pre-existing patients whose benefits had been preapproved at higher, out-of-network rates.[62] Ameritas and other entities shared confidential pricing information to determine, in concert, the lowest rates the Providers would accept.[63]

After the Providers terminated their agreement with DenteMax, they entered into a new "Participating Dentist Agreement" with Stratose on May 27, 2016,[64] expecting that Ameritas would no longer have access to discounted rates.[65] Despite having no direct contract with

---

members, and/or "Strategic Alliance" as defined in Ameritas' Preferred Provider Organization Network Lease Agreement which it "permitted to access and/or utilize the Ameritas network, whether through lease, assignment, sublease, direct contract, or otherwise within the State of Louisiana" in the ten year period preceding the filing of this suit.) *See also* ROA.2501-02, ¶ 16; ROA.2511-12, ¶ 22; ROA.2513-14, ¶ 24; ROA.2514-16, ¶ 25.

[58] ROA.700-12, ¶¶ 15-18, 21-22, 31, 41-51; ROA.1957, ¶ 2; ROA.1958, ¶ 1; ROA.1959-60, ¶¶ 10-11; ROA.1961-62, ¶¶ 24-26; ROA.1963, ¶ 35; ROA.1978-79; ROA.2294-95; ROA.2297-303; ROA.2597; ROA.2562-64, ¶¶ 7-18; ROA.2565-67, ¶¶ 7-18; ROA.2568-79, ¶¶ 3-30.

[59] ROA.700-01, ¶¶ 16-17; ROA.711-12, ¶ 49; ROA.2299; ROA.2564, ¶ 17; ROA.2567, ¶ 17; ROA.2568-579, ¶¶ 3-30.

[60] ROA.701, ¶ 18; ROA.1962, ¶¶ 27-28; ROA.2299.

[61] ROA.700-01, ¶¶ 15-20; ROA.712, ¶ 50.

[62] ROA.716, ¶ 57; ROA.1961, ¶¶ 22, 24; ROA.2299.

[63] ROA.700, ¶¶ 13-14; ROA.2299; ROA.2568-79.

[64] ROA.2568, ¶ 5; ROA.2580-86.

[65] ROA.2298; ROA.2568, ¶ 5; ROA.2580-86.

Ameritas, the Providers were still forced to accept lower, non-competitive rates for services rendered to Ameritas's members.[66]

### b. Misrepresentations and Damage to Provider-Patient Relationships

Ameritas applied discounts based on false and misleading statements regarding coverage, applicable fee schedules, and the Providers' alleged consent.[67]

These misrepresentations included deceptive statements to plan members and providers—often conveyed through Explanation of Benefits ("EOB") forms,[68]—falsely stating that the Providers had agreed to accept lower payments and that patients bore no financial responsibility.[69]

These actions damaged the Providers' professional and business relationships with their patients.[70]

### c. Automated Claims Manipulation

To process claims, Ameritas required the Providers to submit standardized forms that included CDT procedure codes and diagnostic information.[71] Ameritas employed automated systems that applied uniform logic across all claims,[72] altering the submitted CDT codes by

---

[66] ROA.705-06, ¶ 31; ROA.713, ¶ 56; ROA.714,¶ 58. *See also* ROA.1959-60, ¶ 11.

[67] ROA.705-06, ¶ 31; ROA.711, ¶¶ 47-48, ROA.713-14, ¶ 57; ROA.2563, ¶¶ 12-16; ROA.2566, ¶¶ 12-16; ROA.2568-70, ¶¶ 3-19.

[68] ROA.1963, ¶ 34.

[69] ROA.711, ¶ 48; *see also* ROA.2265-66, ¶¶ 7-14; ROA.2268-69, ¶¶ 7-14; ROA.2273, ¶¶ 17-18.

[70] ROA.702, ¶¶ 21-22; ROA.713, ¶ 56; ROA.714, ¶ 58; ROA.1964, ¶¶ 44-46; ROA.2274, ¶ 30.

[71] ROA.1962-63, ¶¶ 33-34; *see also* ROA.2563, ¶¶ 10-11; ROA.2566, ¶¶ 10-11; ROA.2300.

[72] ROA.1963, ¶¶ 35-36; ROA.1973-74, ¶ 14.

replacing higher-paying codes with lower-paying codes, resulting in reduced payments to the Providers.[73]

This computer-generated process bypassed individualized review and disregarded state and federal laws, preapprovals, coverage confirmations, out-of-network Provider rates, and plan terms.[74] These practices—including "cherry-picking," "stacking," "downcoding," "bundling," and repricing out-of-network services—resulted in automatic reductions or denials of valid claims,[75] in violation of Louisiana law.[76]

Ameritas's benefit plans did not authorize the use of such automated repricing systems or disclose any intent to alter CDT codes without individualized clinical review.[77] Ameritas's claims practices violated the terms of its benefit plans, which obligated Ameritas to reimburse Providers for covered, medically necessary services in accordance with plan terms.[78]

### d. Violations of Contractual, Statutory, and Tort Duties

Ameritas's process—from plan issuance to payment—systematically reduced or denied payment for medically necessary covered services provided to its insured members, in violation of the following statutes and legal principles:

---

[73] ROA.1963, ¶ 35-37; ROA.2301; ROA.1981.

[74] ROA.1980.

[75] ROA.1963, ¶¶ 35-38; ROA.2302; ROA.1981.

[76] *See* La. R.S. §§ 22:1151-22:1157.1 (Governing dental benefit policy terms, claims handling, and payment processing.).

[77] ROA.1961, ¶¶ 19-20; ROA.1964, ¶ 41.

[78] ROA.1961, ¶ 20; ROA.1962-63, ¶¶ 30, 32-33; ROA.1981.

1.  Inclusion of the Insurer and/or Benefit Plan on Benefits Cards, La. R.S. 22:984;

2.  Provider Notification Requirements for Third-Party Entities Using, Accessing, or Applying Provider Network Rates, La. R.S. 40:2201-2210;

3.  Dental Service Contracts, La. R.S. 22:1151-1157.1;

4.  Requirements for Clearly Defined Reimbursement Methods, La. R.S. 22:1154;

5.  Requirements for Denial of Claims, Appeal, And Prior Authorizations, La. R.S. 22:1155;

6.  Dental Reimbursements or Payments, La. R.S. 22:1156-1157;

7.  Procedure Codes, Downcoding, and Other Prohibitions, La. R.S. 22:1157.1;

8.  Prompt Pay Statutes, La. R.S. 22:1821-1838;

9.  Breach of Contract, La. Civil Code;

10. Unfair Trade Practices, La. R.S. 51:1401-1429;

11. Negligent Misrepresentation and Fraud, La. Civ. Code arts. 2315 and 2316;

12. Detrimental Reliance, La. Civ. Code art. 1967;

13. Tortious Interference with the Patient-Physician Contract and/or Patient-Physician Relationship, La. Civ. Code art. 2315; and

14. Unjust Enrichment, La. Civ. Code art. 2298.

These allegations give rise to the Providers' core claims under general theories of liability, including breach of contract, statutory violations under the PPO Act and the Insurance Code, and tortious conduct arising from improper claims processing, undisclosed discounting, and failures to meet disclosure and reimbursement obligations imposed by law.

### 3.    Ameritas's Renewed Motion for Summary Judgment on Remand

Ameritas did not move for summary judgment on the merits of the Providers' claims.[79] Instead, it challenged the court's prior determination that "dentists are healthcare providers within the meaning of the PPO Act,"[80] and that "under a plain reading of La. R.S. 40:2203.1, Ameritas could be 'deemed' a group purchaser 'for purposes of this Section' under La. R.S. 40:2203.1(B)(4)."[81]

Ameritas reiterated its pre-remand contention that it cannot be held liable for statutory damages arising from violations of the PPO Act,[82] and, even if it could, such claims would be subject to a one-year prescriptive period.[83]

Additionally, citing La. R.S. 37:1263, Ameritas argued that dentists are not part of the "medical profession," and that the PPO Act's references to "medical services" exclude "dental services."[84]

Ameritas further argued that the Legislature's passage of the NLA in 2021 demonstrates that it never intended the 1984 PPO Act to apply to dental providers or dental services.[85] According to Ameritas, had the Legislature intended the PPO Act to include dental providers and dental services, there would have been no reason to enact the NLA nearly four decades later.[86]

---

[79] ROA.2299-303.
[80] ROA.280-306.
[81] ROA.1486, n.2; ROA.1562.
[82] ROA.1575.
[83] ROA.1581-83.
[84] ROA.1569.
[85] ROA.1568-71.
[86] ROA.1568, 2675-85.

### 4.   Provider Opposition

In opposition,[87] the Providers argued that the contracts must be interpreted according to their express terms,[88] under Louisiana law, and within the broader statutory framework governing healthcare and insurance—including the Insurance Code,[89] the Discount Medical Plan Act,[90] the PPO Act,[91] the Balance Billing Act,[92] the Medical Claims and Prompt Pay Statutes,[93] the Dental Service Contractor Statutes,[94] and the Healthcare Consumer Billing and Disclosure Protection Act,[95] as regulated by Louisiana's Administrative Code.[96]

The Providers submitted critical, undisputed evidence, including their *Objections and Responses to Ameritas's Alleged Undisputed Material Facts*[97] and their *Statement of Uncontested Material Facts*.[98] This evidence included 57 facts with citation to record evidence,[99] which Ameritas did not contest.

Considering intervening developments in the law, the Providers introduced evidence of Ameritas's and DenteMax's licensing status,[100] demonstrated that pre-remand characterizations and legal assumptions

---

[87] ROA.2290-2331.
[88] ROA.2299, 2304-05, 2326, 2330.
[89] La. R.S. §§ 22:1-2657.
[90] *Id.* §§ 22:1260.1-1260.11.
[91] *Id.* § 40:2203.1.
[92] *Id.* § 20:1874(A)(4).
[93] *Id.* §§ 22:1821-1838.
[94] *Id.* §§ 22:1151-1157.1.
[95] *Id.* §§ 22:1871-1881.
[96] ROA.2304-05.
[97] ROA.2332-36.
[98] ROA.2337-50.
[99] ROA.2337-50.
[100] ROA.2351-54.

regarding the contracts were flawed,[101] and showed that Ameritas's Participating Provider Organization Network Lease Agreement effectuated the formation of a PPO under Louisiana law.[102]

The Providers also introduced evidence that Ameritas continued to engage in undisclosed network leasing, automated claims processing, and deceptive discounting through Stratose after the DenteMax agreement was terminated.[103]

Finally, the Providers argued that because Ameritas's motion had been dismissed and was not refiled, there was no live pleading upon which relief could be granted.[104]

### 5. Ameritas's Reply in Support of its Motion for Summary Judgment

In its reply, Ameritas dismissed the Providers' arguments as "extending to matters that do not bear on whether they have actionable PPO Act claims,"[105] and urged the court to "disregard their reference to other laws and arguments, because they derogate from the holdings in the intervening cases."[106]

Beyond these dismissive statements, Ameritas offered no substantive response and did not defend against the Providers' claims of improper claims handling under the PPO Act, related statutes, or Louisiana law.

---

[101] ROA.2297-305.
[102] ROA.2306-07, 2312-15.
[103] ROA.2297-98.
[104] ROA.2290-91.
[105] ROA.2668-69.
[106] ROA.2669.

### 6.    The Court's Ruling

On November 14, 2024, the court granted Ameritas's motion and dismissed the Providers' PPO Act claims, concluding they were the only claims remaining on remand.[107] In reversing its prior ruling,[108] the court held "the passage of the NLA leads to the presumption that dental providers lacked protection from third-party access to a provider network contract or a provider's dental services or contractual discounts pursuant to a provider network contract."[109] Based on that presumption, the court concluded "the DenteMax agreement could not be considered a PPO agreement and that Ameritas could not be deemed a group purchaser under the PPO Act."[110]

 Additionally, the court found that the "DenteMax/Wightman Provider Service Agreement permitted DenteMax to lease its provider network in conformity with the contractual agreement, providing access to Ameritas,"[111] and that because "the parties stipulated that Ameritas last discounted the Providers' claims using the DenteMax rate before the passage of the NLA, they have no claim against Ameritas"[112]— despite undisputed evidence of Ameritas's post-stipulation discounting via Stratose.

Although the court stated it would consider the Providers' proposed amendments in the context of Ameritas's summary judgment

---

[107] ROA.2677-85.
[108] ROA.280-306.
[109] ROA.2682-83.
[110] ROA.2684.
[111] ROA.2684-85.
[112] ROA.2685.

motion, it rejected the Providers' arguments as "novel" and invoked judicial estoppel to avoid addressing them.[113] It treated disputed facts as conclusively resolved in the pre-remand proceedings and not subject to dispute or reexamination on remand.[114]

The Providers moved for reconsideration.[115] The court denied that motion and entered final judgment,[116] dismissing all claims and denying leave to amend on grounds of futility.[117]

---

[113] ROA.2675-76, n.1.
[114] ROA.2675-76.
[115] ROA.2769-811.
[116] ROA.2839-40.
[117] ROA.2685.

## SUMMARY OF THE ARGUMENT

The court erred in concluding that Louisiana's PPO Act, La. R.S. 40:2201–2210, does not apply to licensed dental providers or dental services. When read *in pari materia* with Titles 22, 37, and 40, the Act's text, structure, and purpose confirm that licensed dentists are healthcare providers who deliver medical services—and that Ameritas's conduct falls squarely within the Act's regulatory scope.

La. R.S. 40:2203.1 prohibits payors from applying discounted rates unless the discount organization is disclosed on benefit cards presented at the time of service.[118] "When no discount organization is identified, the insurer identified on the card shall be deemed the group purchaser."[119] La. R.S. 40:2203.1(G) permits a provider to recover damages and attorney fees when a group purchaser fails to comply with La. R.S. 40:2203.1.[120]

La. R.S. 40:2202(3) defines a group purchaser broadly to include "any entity contracting with providers to establish a PPO,[121] entities contracting for the benefit of their insureds, employees, or members,"[122] and "entities which serve as brokers for the formation of such contracts."[123]

---

[118] *Id.* § 40:2203.1(B). *Compare id.* § 40:2202(5) (Defining a PPO as a contractual arrangement between providers and group purchasers for the provision of discounted rates if the contract meets additional statutory requirements.).
[119] *Id.* § 40:2203.1(B)(4).
[120] *Id.* § 40:2203.1(G).
[121] *Id.* § 40:2202(3).
[122] *Id.* § 40:2202(3)(a).
[123] *Id.* § 40:2202(3)(b).

Ameritas's conduct meets every statutory trigger.[124] It is undisputed that:

1.   The Providers are licensed doctors of dental surgery;

2.   Ameritas entered into an undisclosed Participating Provider Organization Network Lease Agreement with DenteMax in 2012;

3.   Ameritas issued benefits cards failing to identify any discount network; and

4.   Ameritas applied discounted rates to the Providers' claims without notice.

*See infra* Arg., II.C.

Thus, the applicability of La. R.S. 40:2203.1 turns on whether DenteMax's Provider Network Agreement and/or Ameritas's Preferred Provider Organization Network Lease Agreement qualify as PPOs; whether dental services constitute "medical services;" and whether Ameritas qualifies as a "group purchaser" under the Act. Under the Act's broad language, the answer to each is yes.

Although the PPO Act does not define "medical services," its language and purpose demonstrate that the Legislature intended the term to include all healthcare services, regardless of the provider's license type, the nature of the health concern, or the service provided. Louisiana law consistently treats licensed dentists as healthcare providers who render medical services—an interpretation reinforced by the definitions and obligations set forth in Titles 22, 37, and 40.[125]

---

[124] *See infra* Arg. IV-V.
[125] *See infra* Arg., III.

The court's reliance on the 2021 NLA to narrow the PPO Act's scope contradicts settled interpretive principles. The NLA governs pre-service dental network contracting and delegates enforcement to the Insurance Commissioner. It does not provide a private right of action and does not displace other statutory remedies under Louisiana law.[126] These statutes are not inconsistent; they regulate distinct stages of provider-payor relationships and were designed to coexist.

The court's ruling also produces irrational and discriminatory results. It would strip PPO Act protections not only from licensed dentists, but also from dental services provided in hospitals and outpatient settings—such as surgeries for oral cancers, congenital defects, or trauma—merely because they involve dentistry. It would also raise legal concerns about the marketing and sale of PPO plans with dental coverage, undermining patient expectations and potentially violating state and federal unfair trade practices laws.[127]

By judicially excluding dental services, the court invites insurers to exclude other providers and services by omission, reducing the PPO Act's inclusive framework to an empty shell. That result is an irrational and discriminatory carveout that is neither supported by the text nor permitted by law.

Finally, the court erred in granting summary judgment despite disputed material facts and in failing to draw all inferences in the Providers' favor as required by Rule 56. It further erred by denying

---

[126] *See infra* Arg., VIII.
[127] *See infra* Arg., II.F.

leave to amend following remand. The Fifth Circuit's mandate, further factual development, and intervening legal developments confirm that Providers have viable claims under the PPO Act, as well as Louisiana's broader statutory, contract, and tort laws. The judgment should be reversed.

## <u>STANDARD OF REVIEW</u>

This Court reviews *de novo* a court's interpretation of a remand order,[128] dismissal for failure to state a claim,[129] and questions of statutory interpretation.[130] The denial of a motion to amend is reviewed for abuse of discretion[131] as is the denial of a motion for reconsideration.[132] "When jurisdiction is based on diversity," a federal appellate court "must apply the substantive law of the forum state."[133] Accordingly, Louisiana substantive law governs this case.[134]

---

[128] *Lion Elastomers, L.L.C. v. NLRB*, <u>108 F.4th 252, 257</u> (La. App. 5th Cir. 2024).

[129] *Stem v. Gomez*, <u>813 F.3d 205, 209</u> (La. App. 5th Cir. 2016).

[130] *Rogers v. Bromac Title Servs., L.L.C.*, <u>755 F.3d 347, 350</u> (La. App. 5th Cir. 2014).

[131] *Stem v. Gomez*, <u>813 F.3d 205, 209</u> (La. App. 5th Cir. 2016).

[132] *Austin v. Kroger Tex., L.P.*, <u>864 F.3d 326, 329</u> (La. App. 5th Cir. 2017).

[133] *Cent. Crude, Inc. v. Liberty Mut. Ins. Co.*, <u>51 F.4th 648, 652-53</u> n.4 (La. App. 5th Cir. 2022)(cleaned up).

[134] *Erie R.R. Co. v. Tompkins*, <u>304 U.S. 64</u>, <u>58 S. Ct. 817</u>, <u>82 L. Ed. 1188</u> (1938).

# ARGUMENT

## I. INTRODUCTION AND GOVERNING PRINCIPLES OF STATUTORY INTERPRETATION

### A. The Central Question: Can Louisiana Law be Interpreted to Exclude Dental Providers from Statutory PPO Authorizations and Protections?

The underlying facts are not in dispute. The Providers delivered covered, medically necessary services. Ameritas applied discounted reimbursement rates to their claims—accessed through an undisclosed 2012 Participating Provider Organization Network Lease Agreement with DenteMax—without identifying DenteMax on the benefit cards presented at the time of service.

Rather than contesting these facts, or claiming compliance with Louisiana law, Ameritas argues the laws cited by the Providers do not apply.[135] It contends:

1. The Providers fail to state a claim under the PPO Act and have no other viable claims on remand;[136]

2. That dental providers are not "providers" within the meaning of the Act;[137]

3. Dental services do not qualify as "medical services;"

4. Ameritas is not a "group purchaser" or "deemed group purchaser" subject to the PPO Act;[138]

5. The 2021 enactment of the NLA, La. R.S. §§ 22:1171–1172, proves that the PPO Act never applied to dental providers or services;[139]

---

[135] ROA.1561.
[136] ROA.1563.
[137] ROA.1569.
[138] ROA.1575-76.
[139] ROA.1568.

6. The Providers' arguments "extend to matters that do not bear on, much less govern, the question of whether they have any actionable claims" under the PPO Act;[140] and

7. "The Providers' attempts to reference other laws or make other arguments that derogate from the strict construction and narrow limits that the LASC placed on La. R.S. 40:2203.1 and :2203.1(G) should be disregarded."[141]

Each argument fails. They conflict with the statutory text, disregard well-settled interpretative principles, and ignore Louisiana's broader regulatory framework. Ameritas seeks to evade its statutory obligations by isolating the PPO Act from the body of law in which it resides, while mischaracterizing the Act as narrowly focused and implicitly exclusionary.

But Louisiana law demands the opposite. As a licensed insurer,[142] Ameritas is subject to Titles 22, 37, and 40, the Civil Code, and administrative regulations governing policy content, disclosure, contracting, and payment. These statutes must be interpreted *in pari materia*—harmoniously and coherently—to give effect to the whole. The PPO Act cannot be parsed in isolation or rewritten through judicial inference. Ameritas cannot evade these requirements by denying the applicability of the very statutes that govern its conduct.

At its core, Ameritas's argument is a post hoc attempt to rationalize abusive claims handling and reimbursement practices. It asks the courts to disregard statutory text, subvert legislative intent,

---

[140] ROA.2668-69.
[141] ROA.2669.
[142] ROA.2353-54.

and sanction a scheme that enables insurers to manipulate claims and exploit discounted provider rates through undisclosed third-party leasing arrangements—without fair notice or compensation to the providers who render care.

That result is incompatible with the PPO Act's purpose and structure. The statute was enacted to protect against precisely this conduct: the imposition of unauthorized discounts and network access without transparency at the time of service. Ameritas's conduct violates that mandate, and its legal defense seeks to render the Act meaningless.

This Court should reject Ameritas's arguments as fundamentally incompatible with the rule of law, antithetical to the legislature's goals, and detrimental to the integrity of Louisiana's healthcare system.

## B. Louisiana Law Prohibits Discrimination Against Dental Providers

Louisiana law expressly prohibits discrimination against licensed dental providers and dental services in health and accident policies and in regard to contracting, reimbursement, and statutory coverage.

Under Louisiana's State Mandated Health Benefits, La. R.S. 22:1021, "any term referring to licensed practitioners of the healing arts, such as "physician," "surgeon," "medical doctor," or other licensed practitioners in a health insurance contract must be construed to include dentists when the service is within their scope of practice."[143] The statute further mandates "payment shall not be denied for services

---

[143] La. R.S. § 22:1021(A).

rendered by a licensed dental provider if those services would be covered if performed by a person licensed to engage in the practice of medicine and surgery."[144]

This anti-discrimination provision—"applicable to all policies, contracts, or other documents delivered, issued, or renewed in Louisiana after 1990"[145]—reflects settled legislative policy: licensed dental providers must be treated equally to other healthcare professionals[146] when acting within their scope of licensure.

The court's ruling—which denies dentists equal protection under the PPO Act based solely on their licensure or the type of services rendered—ignores this statutory directive and contradicts settled law. It imposes unequal treatment without textual support, relying instead on perceived ambiguity in a term ("medical services") that Louisiana law interprets broadly and inclusively.

Any reading of the PPO Act that excludes dentists—and dental services regardless of who performs them—conflicts with Louisiana's statutory scheme and must be rejected. Louisiana law requires parity in both coverage and reimbursement when services fall within a licensed provider's scope of practice.

### C. Statutory Text Controls: The PPO Act's Language Forecloses Ameritas's Position

Under Louisiana law, "when a law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied

---

[144] *Id*. § 22:1021(B); *see also id.* § 46:158.

[145] *Id*. § 22:1021(C).

[146] *Id.*§ 22:1019.1(12) ("Healthcare professional means a healthcare practitioner licensed to perform health care services."). *See also id.* § 22:1872(15).

as written and no further interpretation may be made in search of the legislative intent."[147]

There is no ambiguity in the PPO Act's application to licensed providers of "healthcare services"—a term not limited by license type, service, or practice setting. It applies broadly to all licensed providers delivering "healthcare services," including those who treat conditions of the head, neck, and oral cavity, regardless of their degree or licensure classification.

It is illogical to presume the Legislature intended to exclude licensed dental providers from the PPO Act while extending its protections to other providers treating the same anatomical regions. Indeed, the inclusion of entities like ambulance service companies and nurse midwives—none of whom hold doctorate degrees—confirms that coverage turns on the delivery of services, not the provider's title or credential.

Ameritas's narrow construction would exclude not only dentists, but also other licensed professionals who perform dental procedures, stripping PPO Act's protections from oral surgeries and related care delivered in hospitals and outpatient facilities. That outcome is incompatible with the statutory text and purpose. Such a reading rewrites the statute by implication and contradicts Louisiana's settled rule that exclusions must be express, not presumed.

---

[147] La. Civ. Code art. 9.

### D. Statutory Placement Reinforces the PPO Act's Inclusive Purpose

The PPO Act's placement in Title 40—Louisiana's Public Health and Safety code—is no coincidence. It reflects the Legislature's intent to reduce healthcare costs and increase patient access to care without jeopardizing the quality of care or the ability of providers to meet federal and state regulations.[148]

The Act accomplishes this by authorizing the formation of PPOs,[149] promoting efficiency in the delivery and reimbursement of patient care,[150] and enabling public, state, and government bodies to reduce healthcare spending by contracting with a PPO.[151] It also aims to protect the public and providers from improper reimbursement practices, surprise billing, and silent network arrangements by promoting transparency at the point of care.[152]

In contrast, the NLA—codified in Title 22[153]—is not a public health statute. It regulates private contracting between dental providers and network entities.[154] It does not authorize PPOs, advance public health goals, lower costs, improve quality of care, regulate provider-patient interactions at the point of care, or impose disclosure obligations on insurers or benefit payors at the time services are rendered.

---

[148] La. R.S. § 40:2201(A)(1)-(2).

[149] *Id.* § 40:2201(C); *see also id.* § 40:2203 ("Authorization for preferred provider organizations").

[150] *Id.* § 40:2201(B).

[151] *Id.* § 40:2201(D).

[152] *Id.* § 40:2203.1.

[153] *Id.* § 22:1171-1172.

[154] *Id.* § 22:1172.

The court erred in interpreting the PPO Act—codified in Louisiana's Public Health Code—as a discriminatory statute that excludes dental providers and dental services from its authorizations and protections. The Legislature placed the Act in Title 40 to protect public health and safety, intending for it to apply to all licensed providers delivering healthcare services—including those treating the head, neck, mouth, and jaw.

## II. THE PPO ACT'S TEXT IS DISPOSITIVE: LICENSED DENTAL PROVIDERS ARE "PROVIDERS" UNDER THE PPO ACT

### A. The PPO Act's Broad Definition of "Provider" Includes Licensed Dental Providers

The PPO Act expressly defines a provider as:

> "Provider" shall mean one or more entities which offer healthcare services and shall include but not be limited to hospitals, individuals, or groups of physicians, individuals or groups of psychologists, nurse midwives, ambulance service companies, and other healthcare entities.

> Any healthcare entity which is specifically covered by a group purchaser's insurance policy, employee benefits, self-funded organization or Taft-Hartley trust benefits or plan shall be construed to be a "provider" for purposes of consideration under this Part.

La. R.S. § 40:2202(6) (emphasis added).

The PPO Act's inclusive structure is unmistakable. It employs open-ended language—"shall include but not be limited to"—to confirm the listed examples are illustrative, not exclusive.[155] By including the

---

[155] *Id.* § 40:2202(6).

broad phrase "other healthcare entities"[156] and expanding its reach to "any entity covered by a group purchaser's insurance policy,"[157] the statute reflects a clear intent to encompass a wide range of professionals and organizations providing healthcare services.

By statutory command, any healthcare entity—including those covered by a payor's policy—falls squarely within the Act's definition of "provider." There is no ambiguity, and no reasonable reading of the Act supports the court's exclusion of dental providers from its scope.

## B. Functional Terminology in the PPO Act Supports the Inclusion of Dental Providers

Ameritas contends that the PPO Act does not govern its post-service processing of dental claims because La. R.S. 40:2203.1 "only applies to 'medical services' and 'medical care,' not 'dental providers' or 'dental services.'"[158] That interpretation finds no support in the statutory text or the broader regulatory framework.

The PPO Act employs broad, functional language to ensure transparency in the provision of "health benefits,"[159] "services,"[160] "healthcare services,"[161] "medical care,"[162] and "medical services"[163]—

---

[156] *Stenberg v. Carhart,* <u>530 U.S. 914, 942</u>, <u>120 S. Ct. 2597</u>, <u>147 L. Ed. 2d 743</u> (2000) ("When a statute includes an explicit definition, we must follow that definition ").

[157] La. R.S. § 40:2202(6).

[158] <u>ROA.1568-71</u>.

[159] La. R.S. §§ 40:2201(D), 40:2203.1(A), 40:2203.1(B)(5), 40:2203.1(E).

[160] *Id.* §§ 40:2201(B), 40:2202(1), 40:2202(5)(i), 40:2202(5)(e)(ii), 40:2202(7)(a), 40:2202(7)(c), 40:2207(A), 40:2207(C)(2).

[161] *Id.* §§ 40:2202(5)(c), 40:2202(6), 40:2207(A)-(C)(1)(-2), 40:2208.

[162] *Id.* §§ 40:2203.1(B)-(B)(1).

[163] *Id.* §§ 40:2202(4), 40:2202(5)(d), 40:2203(B), 40:2203(E), 40:2203.1(A), 40:2203.1(C), 40:2203.1(G), 40:2207(A), 40:2208.

terms that are not limited by specific licensure type or specialty. These terms encompass the services delivered, not merely the license of the provider. Louisiana law consistently treats dental care as a form of healthcare subject to medical necessity, licensure, and regulation.

### C. Undisputed Facts Confirm the Applicability of the PPO Act to Dental Providers and Dental Services

Ameritas does not dispute the following material facts:

1. The Providers are "doctors of dental surgery licensed and domiciled in the State of Louisiana, specializing in oral health; diagnosing and treating diseases that affect the gums and teeth; conducting visual examinations, diagnostic tests, and x-rays; assessing oral abnormalities; extracting teeth; treating congenital disabilities, oral disease and injuries; and performing surgical procedures under local anesthesia when required."[164]

2. "Dentistry" involves the "evaluation, diagnosis, prevention, or treatment—including nonsurgical, surgical, or related procedures—of diseases, disorders, or conditions of the oral cavity, maxillofacial areas, or the adjacent and associated structures and their impact on the human body."[165]

3. The Providers prescribe medication and operate under regulations applicable to physicians.[166]

4. Ameritas failed to issue statutorily compliant benefit cards to its members and accessed the Providers' discounted rates through an undisclosed lease agreement with DenteMax.[167]

---

[164] ROA.2344, ¶ 32; ROA.2501-02.
[165] ROA.286; *see also* La. R.S. § 37:751(A)(6).
[166] ROA.2344, ¶ 32; ROA.2501-02.
[167] ROA.2357-91.

These undisputed facts confirm that Ameritas treated the Providers as authorized PPO participants by invoking the DenteMax network to process claims and apply discounts—triggering its statutory obligations under La. R.S. 40:2203.1.

### D. The PPO Act Contains No Express or Implied Exclusions

An analysis of the PPO Act should also be influenced by what it lacks. Nowhere does the Act expressly or implicitly exclude any category of licensed providers from its scope. That legislative silence must be presumed intentional.[168] The absence of limiting language confirms that all licensed healthcare professionals—including dental surgeons—fall within the PPO Act's scope by virtue of their licensure, their role in delivering healthcare services, and their participation in covered benefit plans.

### E. A Narrow Reading Conflicts with the PPO Act's Non-Discrimination Clause

The court's interpretation also contravenes Louisiana's "Any Willing Provider" statute, codified in the PPO Act at La. R.S. 40:2202(5)(c), which "prohibits discrimination against any qualified licensed provider."[169] This provision, read in conjunction with the Legislature's stated intent in La. R.S. 40:2201, affirms a policy of equitable access to PPO participation for all healthcare providers.

---

[168] *Cf. Rotkiske v. Klemm*, 589 U.S. 8, 140 S. Ct. 355, 360-61, 205 L. Ed. 2d 291 (2019).

[169] La. Atty. Gen. Op. No. 1992-824 (La. A.G. 1993), 1993 La. AG LEXIS 79, *2-3 *citing* La. R.S. § 40:2202(5)(c). *See also CIGNA Healthplan v. La. ex rel. Ieyoub*, 82 F.3d 642, 645 (5th Cir. 1996).

Excluding dentists undermines the Act's core objectives: reducing healthcare costs,[170] ensuring compliance with state and federal laws,[171] and promoting accountability in PPO contracting and reimbursement practices.[172]

### F. Louisiana Jurisprudence and the Attorney General Have Rejected Attempts to Narrow the PPO Act's Definition of "Provider"

In 1994, the Attorney General concluded that "dentists are covered by the PPO Act's definition of 'provider' because they 'provide healthcare services to their patients.'"[173] In 2022, the LASC came to the same common-sense conclusion, affirming that the PPO Act defines a "provider" as any entity offering healthcare services.[174]

The Attorney General also cautioned that "arbitrarily excluding a licensed provider from a PPO violates Section 2202(5)(c) of the PPO Act,"[175] and "likely constitutes an unfair trade practice under Louisiana law due to the potential for unfair competition, price fixing, and other monopolistic practices."[176] These adverse outcomes, which the Providers have consistently alleged, are the precise harms the PPO Act was designed to prevent.

---

[170] La. R.S. § 40:2202(6); *see also id.* § 40:2201(D).

[171] La. R.S. § 40:2201(A)(2).

[172] *Id.* § 40:2201.

[173] La. Atty. Gen. Op. No. 1994-315 (La. A.G. 1994), 1994 La. AG LEXIS 479, *3. *See also* La. R.S. § 37.751(B).

[174] *Williams v. BestComp, Inc.*, 2022-00100 (La. 12/09/22), 354 So. 3d 1211, 1216; *accord Wightman v. Ameritas Life Ins. Corp.*, 2022-00364 (La. 10/21/22), 351 So. 3d 690, 693.

[175] La. Atty. Gen. Op. No. 1992-824 (La. A.G. 1993), 1993 La. AG LEXIS 79, *3.

[176] *Id.* 1993 La. AG LEXIS 79, *4.

### G. Extratextual Sources Confirm What the PPO Act Already Says

Even if the statutory text left doubt—which it does not—Louisiana's broader legal framework confirms that dental providers qualify as "providers" rendering "healthcare" and "medical services."

As Louisiana courts have long held, "laws on the same subject matter must be interpreted in reference to each other."[177] "If any reasonable construction avoids conflict, it must be adopted."[178] Here, no such conflict exists. Titles 22, 37, and 40 consistently treat dental care as an integral component of health and accident insurance and public health regulation.

The PPO Act and the Network Leasing Act must be read in harmony with this broader regulatory framework. The NLA does not amend or override the PPO Act's definitions or enforcement provisions. It governs pre-service network contracting terms, not post-service reimbursement. No conflict exists, and none should be judicially manufactured.

### III. HARMONIZING FUNCTIONAL TERMINOLOGY ACROSS LOUISIANA'S HEALTHCARE STATUTES CONFIRMS PPO ACT COVERAGE

### A. Louisiana Recognizes Dental Providers as "Physicians" and "Healthcare Providers" Delivering "Healthcare" and "Medical Services"

Louisiana law broadly defines "healthcare services"[179] across Titles 22, 37, and 40 to include services by licensed "healthcare

---

[177] La. Civ. Code art. 13.

[178] *Int'l Paper Co. v. Hilton*, 2007-0290 (La. 10/16/07), 966 So. 2d 545, 555.

[179] La. R.S. §§ 22:242(5), 22:1007(A)(2), 22:1020.62(A)(4), 22:1260.41(9), 22:1831(12), 22:1872(16), 22:2392(29), 40:1231.1(A)(9), 40:1223.3(3), 46:460.51(8); *see also* 39:1556(42).

providers"[180] for the diagnosis, treatment, or prevention of illness, injury, or disease—including dental care.[181] Although the PPO Act does not define "medical services," related statutes demonstrate that the term is used functionally and is not limited by license type or specialty.

Like medical doctors, doctors of dentistry "diagnose and treat illness, disorders, or conditions of the oral cavity, maxillofacial areas, or adjacent associated structures and their impact on the human body;"[182] administer anesthesia;[183] prescribe controlled substances;[184] and perform surgery in hospitals[185]—core medical functions. Numerous statutes confirm that dentists are treated as "physicians" for insurance, licensure, liability, and public health purposes.[186]

Louisiana law expressly defines a "physician" as "a person with a license or permit to practice medicine,"[187] including "any licensed medical doctor, dentist, or other licensed practitioner authorized to

---

[180] La. R.S. §§ 9:2797(A), 9:2797(D)(1), 9:2799.5(D)(3), 9:4751(2), 9:5628(C), 13:3734(A)(2), 14:34.8(B)(3), 22:242(8), 29:762(4), 22:1009(A)(5), 22:1019.1(13), 22:1020.62(A)(3), 22:1260.2(9), 22:1260.2(1), 22:1260.41(8), 22:1831(11)(a)-(b), 22:1872(17), 22:2392(27)-(38), 29:762(4), 37:1745(A)(2), 37:1746(2), 37:1751(A)(2), 40:1231.1(A)(10), 40:1223.3(3), 40:2144(A)(1), 46:460.51(7); La. Civ. Code arts. 2322.1(A), 2322.1(D)(1); *see also* La. R.S. §§ 40:961(35), 40:1237.1(A)(6), 40:1237.1(9)(a)(ii).

[181] ROA.2785, § I., ¶ C; *citing* La. R.S. §§ 9:4751(2), 9:5628(A), 13:3734(A)(2), 14:34.8(B)(3), 22:242(5), 22:1009(A)(6), 22:1019.1(14), 22:1020.62(A)(1), 22:1027(A), 23:1021(6), 29:762(4), 37:751(6), 40:1231.1(A)(10), 40:1237.1(A)(9)(a)(i), 40:1237.1(A)(9)(a)(iv), 40:2144(A)(1).

[182] La. R.S. § 37:751(A)(6).

[183] ROA.2786; *see also* La. R.S. §§ 22:1040(A), 37:772(A)(1), 37:793-794.

[184] ROA.2786, *citing* La. R.S. §§ 37:772(A)(1), 37:793, 37:794, 37:1701(A).

[185] ROA.2786, *citing* La. R.S. §§ 37:772(B)(1), 37:796, 37:796.1.

[186] ROA.2786, *citing* La. R.S. §§ 37:773, 40:1157.1-40:1157.3, 40:1165.1(3)(a)-(b), (B)(1), 40:31.63(C), 40:961-40:996.7, 40:1001-40:1014, 47:305(D).

[187] La. R.S. § 40:1237.1(A)(6).

prescribe or order any drug."[188] Licensed dentists may use the title "Doctor"[189] and perform diagnostic and surgical procedures in hospitals.[190]

Hospital regulations reinforce this alignment and mandate a single, organized medical and dental staff.[191] Hospitals are authorized to contract with an "on-call physician," defined as "a physician, oral and maxillofacial surgeon, or their professional medical or dental corporation or limited liability company."[192]

These provisions confirm licensed dentists are recognized as "physicians" and "healthcare providers" who deliver "healthcare" and "medical services" under Louisiana law. Reading the PPO Act in harmony with these statutes—as required by law—leaves no doubt: dental providers and dental services fall within the Act's scope.

### B. Licensing Boards Do Not Determine Provider Status Under the PPO Act

Ameritas's contention—that dental providers are not members of the "medical profession"[193] and the PPO Act applies exclusively to

---

[188] *Id.* § 46:2622(16).

[189] *Id.* § 37:771.

[190] *Id.* §§ 37:772(B)(1), 37:796, 37:796.1.

[191] *Id.* § 40:2114.

[192] *Id.* § 37:1731(A)(2)(d); *see also id.* §§ 40:1233.1, 40:1235.1.

[193] ROA.1569 (Ameritas refers to La. R.S. §§ 37:21.1, which is repealed, 37:751 *et seq.,* referring to Dentists, 37:771 *et. seq.* which refers to Physicians, surgeons, and midwives, and 37:1262 *et seq.* which establishes definitions for Title 37, Chapter 15, Part 1. It is presumed Ameritas intended to cite to La. R.S. §§ 37:751-798, which refers to Dentists and La. R.S. §§ 37:1261-1360.111 which refers to Medicine, surgery, and midwifery.).

"medical services" and "medical care"[194]—is legally and factually untenable.

Louisiana maintains separate licensing boards for many healthcare professions, including podiatry,[195] registered nursing,[196] practical nursing,[197] optometry,[198] mental health professionals,[199] and midwifery[200]—all of which are recognized as healthcare providers under Louisiana law.

These distinctions are administrative—not substantive—and exist to ensure that regulatory oversight is tailored to the needs of each field—not to serve as a basis for discriminatory treatment in other areas of the law.[201]

The PPO Act assigns no legal significance to which board licenses a provider. Its authorizations and protections apply to all licensed providers delivering healthcare or medical services, including dental professionals.

### C. Dental Providers and Physicians are Subject to the Same State and Municipal Regulations

Louisiana treats licensed dentists as both physicians and healthcare providers for regulatory purposes, subjecting them to the

---

[194] ROA.1568-70.
[195] La. R.S. Ann. § 37:612.
[196] *Id.* § 37:914.
[197] *Id.* § 37:962.
[198] *Id.* § 37:1042.
[199] *Id.* § 37:1104
[200] *Id.* § 37:1263.
[201] *See generally id.* §§ 37:1-3726.

same state and municipal public health laws, including those governing contagious and infectious diseases.[202]

Like physicians and surgeons, licensed dentists must adhere to laws regarding patient consent,[203] medical records,[204] reporting requirements,[205] controlled substances laws,[206] and prescription monitoring programs.[207] They are also exempt from charging state sales tax on services, devices, and drugs for personal use.[208]

In addition, dentists—like all licensed providers—are subject to the Louisiana Healthcare Professional Reporting Act[209] and the Medical Malpractice Act,[210] which apply uniformly to safeguard public health, further underscoring the inclusion of dental services within the scope of "medical services" under the PPO Act.

### D. "Dental Services" Constitute Ordinary Medical Services

Louisiana's public policy recognizes dental care as a vital aspect of overall health, as reflected in multiple statewide initiatives, including a statutory mandate for water fluoridation[211] and the inclusion of dental benefits in state insurance assistance programs[212]—each aimed at advancing public health through improved oral care.

---

[202] La. R.S. § 37:773.
[203] *Id.* §§ 40:1157.1-1157.3, 40:1161.1.
[204] *Id.* §§ 40:1165.1-1165.3.
[205] *Id.* § 40:31.63(C).
[206] *Id.* §§ 40:961-996.7.
[207] *Id.* §§ 40:1001-1014.
[208] *Id.* § 47:305(D).
[209] *Id.* §§ 37:1745.11-1745.17.
[210] *Id.* §§ 40:1231.1-1231.10.
[211] *Id.* § 40:5.11(A).
[212] *Id.* §§ 40:1250.31-1250.32, 40:2017(A)(2).

Louisiana also mandates that all insurance policies issued after January 1, 1998, include coverage for the "primary condition of cleft lip and palate, as well as related secondary conditions, such as preventative and restorative dentistry, oral and facial surgery, prosthetics, orthodontics, and follow up care."[213]

Under a wide range of Louisiana laws—including those governing criminal, family, and civil matters—"ordinary medical expenses" include dental treatment.[214]

## E. Medical Claim and Prompt Pay Protections Apply to Dental Providers

Louisiana's Medical Claims and Prompt Pay Statutes, La. R.S. 22:1831-22:1838, apply to all healthcare providers and mandate timely reimbursement for services rendered.[215] "An insurer that contracts, subcontracts, or arranges with another entity for the provision of any services related to payment of claims, including but not limited to a third-party administrator or a network of providers, is responsible for compliance" with these statutes.[216]

Louisiana's Balance Billing Act similarly affirms that when a payor contracts with a provider network, it must pay the contracted reimbursement rate listed on the insured's benefit card presented at the

---

[213] *Id.* § 22:1026(A)(1)-(9).
[214] La. R.S. §§ 4:183(C), 9:315(B)(8), 9:358.4(A)(3), 9:3879(3), 13:124, 13:352(C), 13:691(B)(3), 15:705(C)(1), 15:773, 15:831(A), 17:2149(A)(1)(b), 17:2149(A)(1)(d), 17:3082(8)(d)(ii), 17:3312(A)(1)(b), 17:3312(A)(1)(d), 22:1213(B)(2), 22:1213(B)(10)-(11), 23:1203; *see also id.* § 45:844.12(6)(i).
[215] La. R.S. §§ 22:1831-38.
[216] *Id.* § 22:1835(B).

time of service—pursuant to La. R.S. 40:2203.1.[217] These obligations apply to all licensed healthcare providers, including dentists.

## IV.  PPO STRUCTURES, BENEFIT CARDS, AND PAYMENT OBLIGATIONS UNDER LOUISIANA LAW

Having established that licensed dental providers qualify as "providers" under the PPO Act, the next question is whether Ameritas complied with its statutory obligations in structuring its plans and processing claims. This section examines Louisiana's requirements for PPO formation, benefit card disclosure, and claims handling—and how Ameritas failed to meet them.

### A. PPOs are Legally Distinct from Provider Networks

Under Louisiana law, a PPO may be formed through direct contracts, third-party agreements, assignments, or leases.[218] A valid PPO requires 1) an agreement or series of agreements;[219] 2) a provider;[220] 3) a payor;[221] 4) patients;[222] 5) resource monitoring,

---

[217] *Id.* § 22:1874(A)(4).

[218] *See id.* § 40:2203.1; *see also id.* §20:1874(A)(4) and *Wightman v. Ameritas Life Ins. Corp.*, 2022-00364 (La. 10/21/22), <u>351 So. 3d 690, 696-97</u> ("The damages and other penalties set forth in La. R.S. 40:2203.1 arise out of the implied contractual obligation of good faith in the performance of the contract between the parties, as well as with respect to their lawful assignees and/or lessees.") (cleaned up).

[219] La. R.S. § 40:2202(5).

[220] *Id.* § 40:2202(6).

[221] *Id.* § 40:2202(7)(c) (A PPO must provide a tangible benefit to the provider including a "reasonable expectation of prompt payment for services rendered.").

[222] La. R.S. § 40:2201 (Authorizing the formation of preferred provider organizations which incentivize purchasers to strive for more efficient payment for services rendered and providers to strive for cost-effective methods of providing patient care.).

credentialing, and quality control;[223] and 6) tangible benefits.[224] Entities accessing discounted rates through network leases are subject to the PPO Act's reimbursement and disclosure requirements.[225]

In contrast, "provider networks"[226] like DenteMax contract directly with providers and sell or lease access to third-parties like Ameritas. Provider networks do not issue benefit cards or pay claims; the third-party entities do—often paying the network a share of the savings realized from discounted services.[227]

---

[223] La. R.S. § 40:2202(5)(e) (Requiring quality control for patient care, cost effectiveness, and prompt payment for services rendered.).

[224] La. R.S. § 40:2202(7) (Tangible benefits include, but are not limited to 1) a reasonable expectation of a demonstrable increase in or usage of the provider's services, 2) contractual obligations requiring quality control of patient care and participation in resource monitoring, or 3) a reasonable expectation of prompt payment for services rendered.).

[225] *Wightman v. Ameritas Life Ins. Corp.*, 2022-00364 (La. 10/21/22), 351 So. 3d 690, 696-97; *accord Williams v. BestComp, Inc.*, 2022-00100 (La. 12/09/22), 354 So. 3d 1211, 1217-19.

[226] La. R.S. § 22:1260.2(10) ("'Health care provider network' shall mean an entity which directly or indirectly contracts with a health care provider and has contractual rights to negotiate on behalf of those health care providers with a discount medical plan organization to provide medical services to members of a discount medical plan.").
*Compare* La. R.S. §§ 22:1019.1-1019.2 (The Network Adequacy Act mandating insurers like Ameritas maintain a "sufficient number of contracted 'in-network' providers" which states a "'Network of providers' or 'network' means an entity, including a health insurance issuer, that, through contracts or agreements with health care providers, provides or arranges for access by groups of covered persons to health care services by health care providers who are not otherwise or individually contracted directly with a health insurance issuer." *Id.* at § 22:1019.1(17). *See also* ROA.2312.

[227] *Broussard Physical Therapy v. Family Dollar Stores, Inc.*, 08-1013 n.2 (La. 12/02/08), 5 So. 3d 812, 813 n.2 (Discussing the contractual relationships formed between participating providers, provider networks, and the clients who pay to lease or access the provider network's service agreements.)

Insurers like Ameritas routinely lease third-party networks to obtain pricing advantages while satisfying their obligations under Louisiana's Network Adequacy Act, La. R.S. 22:1019.1–1019.2, to maintain a sufficient number of contracted network providers, whether through direct or indirect provider agreements.[228]

Critically, the PPO Act's disclosure obligations under La. R.S. 40:2203.1 do not arise from the mere existence of a lease. They are triggered when 1) a patient presents a benefit card that does not identify a discount provider network at the time of service, and 2) a discount is applied to the provider's claim. If no discount is taken, the Act does not apply.

## B. Insurer Identification and Benefit Card Requirements Enforce Transparency

Under La. R.S. 22:984, any insurer authorized to issue health, accident, or dental plans [229] in Louisiana must clearly display its name and the member's name on the face of each benefit card.[230]

La. R.S. 40:2203.1(B) further requires any third-party accessing discounted rates through a provider network to identify that network's name or logo on the benefit card presented at the time of service. If this disclosure is missing, the discount cannot be enforced,[231] and damages must be paid to the provider.[232] These provisions enforce transparency

---

[228] La. R.S. § 22:1019.1(17)-(18).

[229] *Id.* §§ 9:153(7), 22:47-48, 22:1009(A)(7), 22:1020.62(A)(1), 22:1831(14), 33:1342(7).

[230] *Id.* § 22:984(A), (C).

[231] *Id.* § 40:2203.1(B), (D).

[232] *Id.* § 40:2203.1(G).

and prevent unauthorized discounting by undisclosed contracting arrangements.

### C. Discount Medical Plans Are Not PPOs

DenteMax is licensed under the Louisiana Discount Medical Plan Act ("DMPA")[233] as a discount medical plan organization.[234] Such entities offer access to "medical services"[235] through "healthcare provider networks"[236] but do not underwrite insurance, issue benefit cards, or pay claims.[237] By law, they may not represent themselves as insurance.[238]

Because DenteMax does not apply discounts, issue benefit cards, pay claims, or serve as the contracting payor, its provider network lacks the essential elements of a valid PPO under Louisiana law. That status properly belongs to Ameritas, which entered into a series of agreements to access the DenteMax network, applied discounted rates to covered dental services, reimbursed providers, and offered those discounts as a tangible benefit to its insured members—thereby meeting the legal criteria for a PPO.

---

[233] *Id.* §§ 22:1260.1-1260.11 (Enacted for the "purpose of protecting the public from inappropriate, unfair, and deceptive marketing, sales or enrollment practices and to facilitate consumer understanding of the role and function of discount medical plan organizations in providing access to medical services."). *See also* ROA.2311, 17.

[234] La. R.S. § 22:1260.2(5); *see also* ROA.2351-52.

[235] La. R.S. § 22:1260.2(13) ("'Medical services' shall mean any care, service, or treatment of illness or dysfunction of, or injury to, the human body, including but not limited to … dental services ….")

[236] *Id.* § 22:1260.2(6), (10); *see also* ROA.2312.

[237] ROA.2355, § I, ¶ 5; ROA.2356, § I, ¶ 5.

[238] La. R.S. § 22:1260.7(B)-(C), *see also* ROA.2313.

### D. Dental Service Plans Qualify as Health and Accident Policies

Title 22 regulates health and accident policies, including dental service plans issued after July 12, 1985.[239] Entities like Ameritas that accept prepaid premiums for future access to dental services qualify as "dental service contractors."[240] These entities are regulated as health and accident insurers, subject to Title 22's provisions[241] governing the delivery of healthcare benefits through insurance, reimbursement, or PPO agreements.[242]

As such, Ameritas is subject to the provisions of Title 22 governing the delivery of healthcare benefits, whether through traditional insurance, reimbursement models, or PPO agreements. Any argument that the PPO Act does not apply to dental services is foreclosed by Louisiana law, which expressly recognizes that dental plans deliver healthcare benefits and are governed by both the Insurance Code and the PPO Act.

### V. AMERITAS FORMED A PPO AND QUALIFIES AS A "GROUP PURCHASER" UNDER LOUISIANA LAW

#### A. Ameritas's Network Lease Agreement with DenteMax Formed or Established a PPO

Ameritas contends "it did not form or establish the DenteMax PPO because DenteMax's provider network predated Ameritas's 2012 Participating Provider Organization Network Lease."[243]

---

[239] La. R.S. § 22:1154(G), *see also* ROA.2318.

[240] La. R.S. § 22:1151.

[241] *Id*. § 22:1152(B).

[242] *Id*. § 22:1831(13), *see also id.* § 40:2203(C).

[243] ROA.1555-56 (cleaned up), 1561 (cleaned up).

This argument conflates provider networks with PPOs and misapprehends the Act's scope. The PPO Act does not limit group purchaser status to entities first in line to contract; it applies to any third-party entity that accesses provider discounts and administers payments.[244]

As the court noted in its first unappealed ruling,

> Defendants attempt to make the rather incredulous argument that the PPO Act does not apply to dentistry because dentistry is not explicitly enumerated in the statute. The court notes the inconsistency of Defendants arguing that their own business arrangement, entering into PPO agreements with a dental service provider, has been unauthorized under the PPO Act this entire time.[245]

No PPO relationship existed under Louisiana law until Ameritas—the obligated payor—entered into a lease agreement with DenteMax on April 10, 2012. That juridical act triggered the statutory framework and formed a valid PPO.

Whether Ameritas's lease agreement "formed" DenteMax's provider network or merely "amended" an existing one is immaterial. The PPO Act expressly "applies to all agreements issued or amended in any form after January 1, 2000."[246] Ameritas's lease agreement satisfies this condition and establishes Ameritas as a group purchaser bound by the Act.

---

[244] *Wightman v. Ameritas*, 2022-00364 (La. 10/21/22), 351 So. 3d 690, 697; *accord Williams v. BestComp, Inc.*, 2022-00100 (La. 12/09/22), 354 So. 3d 1211, 1217-19.

[245] ROA.285-86.

[246] *See* Acts 1999, No. 1274, § 2.

## B. Ameritas Qualifies as a "Group Purchaser" or "Deemed Group Purchaser"

Under La. R.S. 40:2202, a group purchaser includes any entity that contracts with providers or accesses provider discounts for its members' benefit.[247]

Ameritas did both. By leasing DenteMax's network and reimbursing claims at discounted rates, Ameritas acted for the benefit of its members and fits squarely within the statutory definition.

Even if Ameritas did not qualify under La. R.S. 40:2202(3), it is a "deemed group purchaser" under La. R.S. 40:2203.1(B)(4),[248] which applies when a benefit card presented at the time of service fails to identify a discount provider network. Ameritas issued benefit cards that omitted any reference to DenteMax while applying its network discounts post-service. This undisputed fact satisfies the statutory deemer provision.

This interpretation is reinforced by a 1988 Louisiana Attorney General advisory opinion concluding that entities contracting with provider networks to facilitate PPO arrangements for the benefit of their members are "group purchasers" under the Act.[249]

## C. Ameritas Assumed Operational Control and Payment Obligations

Ameritas's argument that it is not liable under the PPO Act because it lacked a direct contract with the Providers also fails.[250]

---

[247] La. R.S. § 40:2202(3)(a).
[248] ROA.1486, n.2.
[249] La. Atty. Gen. Op. No. 1987-831 (La. A.G. 1988), 1988 La. AG LEXIS 5 at *2-3.
[250] ROA.1555, 61.

In *Williams v. BestComp, Inc.*, the LASC held that group purchaser status turns on function, not form.[251] There, the court determined that StrataCare did not qualify as a group purchaser because it did not issue benefit cards, apply discounts, or control payment.[252]

Ameritas, by contrast, controlled every material function: it issued benefit cards, selected the DenteMax network, applied discounts post-service, and paid claims directly. These actions confirm that Ameritas—not DenteMax—operated as the group purchaser and assumed the corresponding obligations under La. R.S. 40:2203.1.

Ameritas's conduct violated the PPO Act and Louisiana's broader regulatory framework governing benefit plans, reimbursement, and claims administration.

## VI. AMERITAS'S INVOCATION OF THE PPO ACT'S STATUTORY EXEMPTION CLAUSE REVEALS A FATAL INCONSISTENCY

Ameritas argues it is exempt from the PPO Act under La. R.S. 40:2203.1(A), which applies to entities that "provide benefits through their own direct provider network." But Ameritas did not contract directly with providers; it accessed discounts through third-party leases, placing it outside the exemption and squarely within the Act's scope.

By invoking an exemption available only to direct PPOs, Ameritas necessarily concedes it operated an indirect PPO and qualifies as a group purchaser under the Act. This admission is fatal: : either Ameritas operated a direct PPO, in which case disclosure was

---

[251] *Williams v. BestComp, Inc.*, 2022-00100 (La. 12/09/22), 354 So. 3d 1211.
[252] *Williams v. BestComp, Inc.*, 354 So. 3d 1211, 1217 (La. 2022).

unnecessary, or it operated an undisclosed indirect PPO using a leased network, in which case the exemption is unavailable and disclosure was mandatory

Ameritas's attempt to disavow the Act's obligations while invoking its protections is legally untenable and underscores its noncompliance with Louisiana law.

## VII. AMERITAS'S ATTEMPT TO EVADE STATUTORY DAMAGES IS FORECLOSED BY THE PPO ACT AND BINDING PRECEDENT

### A. The PPO Act Imposes Liability for Discounting Without Disclosure

Ameritas contends it cannot be held liable for statutory damages or attorneys' fees under La. R.S. 40:2203.1(G) because "the statute must be strictly construed and does not expressly authorize remedies against 'other entities' accessing discounts."[253] That argument has been squarely rejected by the LASC in two intervening decisions of law issued during the pendency of the first appeal.

In *Wightman v. Ameritas*, 2022-00364 (La. 10/21/22), 351 So. 3d 690 the LASC held that:

> The damages and other penalties set forth in La. R.S. 40:2203.1 arise out of the implied contractual obligation of good faith in the performance of the contract between the parties, as well as with respect to their lawful assignees and/or lessees, which includes the provision of notice necessary to the accomplishment of the parties' performances under the contract.

*Id.* at 697.

---

[253] ROA.1556, 61.

The LASC reaffirmed this principle in *Williams v. BestComp*, holding that liability under La. R.S. 40:2203.1 extends to all entities involved in PPO discounting arrangements—whether as assignees, lessees, or third-party network accessors—when they apply discounts without notice. *Williams* also confirmed that group purchaser status turns on contractual function, not form, and that third-party entities applying discounts through network leases may be liable under the PPO Act if they fail to meet its disclosure requirements.[254]

Ameritas's interpretation ignores this binding precedent. Its role as a payor applying discounts through undisclosed leased networks falls squarely within the scope of liability recognized in both *Wightman* and *Williams*.

## B. PPO Act Remedies Are Contractual and Subject to a Ten-Year Prescriptive Period

Ameritas also contends that remedies under La. R.S. 40:2203.1(G) are delictual and prescribe in one year.[255] The LASC has also rejected this argument.

In *Wightman*, the court held that "the contractual nature of the duties at issue mandates that the prescriptive period for claims on the statutory remedies provided in La. R.S. 40:2203.1 is ten years."[256]

This holding is dispositive. Because La. R.S. 40:2203.1(G) provides remedies for violations of implied contractual obligations—specifically, failure to disclose applicable discounts—such claims are governed by

---

[254] *Williams v. BestComp, Inc.*, 2022-00100 (La. 12/09/22); 354 So. 3d 1211, 1217-19.
[255] ROA.1556, 1562.
[256] *Wightman v. Ameritas Life Ins. Corp.*, 2022-00364 (La. 10/21/22), 351 So. 3d 690, 696-97.

Louisiana's ten-year prescriptive period for contract actions, not the one-year period for delictual claims.[257]

## VIII. THE PPO ACT AND THE NLA OPERATE CONCURRENTLY TO REGULATE DIFFERENT PHASES OF PROVIDER-PAYOR RELATIONSHIPS

### A. The PPO Act Regulates Conduct at the Time of Service and Provides Direct Remedies

Enacted in 1984, the PPO Act governs provider-payor interactions at the time of service. It imposes strict disclosure requirements on accessing entities[258] to serve the Act's core purpose: preventing silent PPO arrangements, ensuring transparency, and protecting providers from undisclosed third-party discounting. These obligations ensure transparency and informed consent by enabling providers to verify coverage and the legitimacy and contractual basis of any discount applied.

The Act provides a private right of action for violations, including statutory damages and attorneys' fees. These protections apply to all licensed providers, including dentists, as confirmed by Louisiana's Balance Billing Act, La. R.S. 22:1874(A)(4), which links its prohibitions to third-party leasing arrangements under La. R.S. 40:2203.1.

### B. The NLA Regulates Contract Formation and Delegates Enforcement to the Insurance Commissioner

Enacted in 2021, the NLA governs the formation and modification of dental network contracts issued or renewed after August 1, 2021.[259] It

---

[257] *Id.* at 697.
[258] La. R.S. § 40:2203.1(B).
[259] 2021 La. ALS 26; 2021 La. ACT 26; 2021 La. HB 387.

requires contracting entities to 1) allow providers to opt out of third-party leasing arrangements at the time of contracting or modification;[260] 2) disclose all existing third-party relationships;[261] 3) require third-parties to comply with contractual terms;[262] 4) notify providers of new third-party relationships;[263] 5) update third-party lists every 90 days;[264] 6) honor a provider's termination requests;[265] 7) refrain from enforcing non-compliant contracts;[266] and 8) forbid waivers of any contract provisions.[267]

Unlike the PPO Act, the NLA does not provide a private right of action. Instead, it delegates enforcement to the Insurance Commissioner.[268] This limitation is significant. In *Anderson v. Ochsner Health Sys.*, 2013-2970 (La. 07/01/14), 172 So. 3d 579, 584, the LASC held that "a person's individual right to seek recourse for an alleged wrong should not depend on a governmental body's decision to pursue the offender and seek relief that will not directly benefit the plaintiff."

Because the NLA lacks individual remedies, it does not displace the Providers' ability to pursue claims under the PPO Act or Louisiana's broader healthcare regulatory framework. As the LASC has recognized,

---

[260] *Id.* § 22:1172(B)(1).
[261] *Id.* § 22:1172(A)(3).
[262] *Id.* § 22:1172(A)(2).
[263] *Id.* § 22:1172(A)(5).
[264] *Id.* § 22:1172(A)(4).
[265] *Id.* § 22:1172(A)(7)-(8).
[266] *Id.* § 22:1172(C).
[267] *Id.* § 22:1172(F).
[268] La. R.S. § 22:1172(E).

"remedies can co-exist without either preventing the success of the other."[269]

### C. The Legislative Record Confirms the PPO Act Continues to Apply to Dental Providers

The district court erred in presuming that the NLA's enactment implied that dental providers were always excluded from PPO Act's scope.[270] The legislative record provides no support for that inference. On the contrary, legislative testimony described real-world harms caused by undisclosed, post-service discounting, reinforcing the need for both pre- and post-service protections.

The NLA was enacted to strengthen—not displace—existing law by requiring transparency and consent at the time of contracting. It did not create a new regulatory regime or repeal existing law. Nor does it require disclosure of network affiliations or discount arrangements on benefit cards—requirements that remain exclusive to the PPO Act.

Far from supporting a presumption of exclusion, the NLA complements the PPO Act by regulating *pre-service* dental network contracting, while the PPO Act continues to govern *time-of-service* disclosure and *post-service* reimbursement practices. The statutes operate in harmony—not in conflict.

---

[269] *Anderson v. Ochsner Health Sys.*, 2013-2970 (La. 07/01/14), 172 So. 3d 579, 585, n.8.

[270] ROA.2682-83.

### D. The Court's Application of the NLA to Divest the Providers of Vested Claims Was Legal Error

The court further erred by applying the NLA retroactively to bar the Providers' contractual and tort-based claims arising nearly a decade before its enactment. That application contradicts Louisiana law.

Under *Cole v. Celotex Corp.*, 599 So. 2d 1058 (La. 1992), substantive laws may not be applied retroactively, absent clear legislative intent. The NLA contains no retroactivity clause.

Even if the NLA were relevant to interpreting the parties' pre-enactment contracts, it does not alter the PPO Act's core protections or displace the private right of action under La. R.S. 40:2203.1(G).

### E. Ameritas Remains Bound by the PPO Act, Regardless of the NLA

Ameritas cannot escape liability under the PPO Act by invoking the NLA. Even if the NLA applied—which it does not—it would not negate Ameritas's independent obligations to:

- Disclose applicable networks on benefit cards;
- Reimburse claims in accordance with those disclosures; and
- Refrain from applying unauthorized discounts to non-consenting providers.

These duties arise under the PPO Act and Title 22 and remain enforceable, independent of the NLA. The PPO Act—not the NLA—governs conduct at the time of service and provides the applicable remedy for Ameritas's violations.

IX. **THE DISTRICT COURT ERRONEOUSLY REJECTED THE PROVIDERS' ARGUMENTS ON REMAND AND IMPROPERLY DENIED AMENDMENT AND RECONSIDERATION**

### A. The District Court Misconstrued the Scope of the Providers' Claims

The district court erroneously concluded that the Providers' only claims on remand arose under the PPO Act, rejecting related claims under contract, tort, and other healthcare laws as abandoned, "novel" and "inconsistent" with prior arguments.[271] That conclusion disregarded the Fifth Circuit's mandate, the procedural posture on remand, and intervening legal developments requiring renewed factual and legal determinations.

From the outset, the Providers asserted claims for undisclosed network leasing, claims manipulation, misrepresentations, improper discounting, breaches of contract, and violations of contractual, statutory, and tort duties under Louisiana law. These claims were preserved on appeal, reasserted on remand—and further supported by binding precedent confirming their legal and factual significance and clarifying the scope and application of Titles 22, 37, and 40, the Louisiana Civil Code, and the PPO Act to the Providers' claims.

The legal theories advanced by the Providers remained consistent throughout the litigation. On remand, they merely applied clarified law to the previously pleaded claims and contracts. Judicial estoppel does not bar a party from pressing preserved claims and legal arguments advanced on remand under binding intervening precedent. The district

---

[271] ROA.2675-76, n.1.

court's narrow reading of the pleadings and disregard of controlling precedent was in error.

### B. The District Court Abused its Discretion by Denying Leave to Amend, Rejecting Claims Tried by Consent, and Denying Reconsideration

A court must have a "'substantial reason to deny a party's request for leave to amend."[272] In analyzing the claims, all well-pleaded facts are accepted as true and should be examined "in the light most favorable to the plaintiff."[273] "A claim has facial plausibility when the complaint's factual content allows the court to draw the reasonable inference that the defendant is liable."[274] "Failure to provide an adequate explanation to support denial of leave" may be grounds for reversal.[275]

First, the Providers' allegations and arguments on remand that the court deemed "novel" were not new. They were pleaded in the operative complaint, addressed in the Joint Status Report on remand, developed through discovery, and briefed on summary judgment. The record shows these claims were tried by consent and, under Federal Rule of Civil Procedure 15(b), must be treated as if properly pleaded.[276]

Second, intervening legal authority required the court to reassess the claims and evidence on remand and make new factual and legal

---

[272] *Stem v. Gomez*, 813 F.3d 205, 215 (La. App. 5th Cir. 2016).
[273] *Id.* at 209.
[274] *Id.*
[275] *Id.* at 215.
[276] *See also Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 331 (La. App. 5th Cir. 1994); *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S. Ct. 2868, 2877, 49 L. Ed. 2d 826 (1976); and *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1163 (La. App. 5th Cir. 1992).

determinations. The Providers expounded upon long-standing claims with additional evidence and statutory authority, raising a reasonable inference of liability.

The court's refusal to adjudicate these claims on remand—despite ruling that they, and the proposed amendment, would be considered in light of the summary judgment record—elevated form over substance and denied the Providers a merits-based adjudication of claims that were squarely before the court. Ameritas suffered no prejudice and had ample opportunity to respond. Reversal is warranted to ensure adjudication on the merits consistent with Louisiana law and federal procedure.

## CONCLUSION

For the foregoing reasons, the court's judgment should be reversed. The plain language, structure, and purpose of the PPO Act compel the conclusion that licensed dental providers are "providers" of "healthcare services" and "medical services" entitled to its authorizations and protections. The court erred in presuming that the NLA retroactively narrowed the PPO Act's scope, refusing to adjudicate preserved claims, and denying leave to amend and reconsideration.

Accordingly, Appellants respectfully request that this Court:

1. **Reverse** the court's judgment finding the Providers abandoned all non-PPO Act claims and dismissing their cause of action;

2. **Hold or remand with instructions that:**

   - the PPO Act applies to licensed dental providers and dental services;

- Ameritas's April 10, 2012, Participating Provider Organization Network Lease Agreement constituted a juridical act forming or amending a PPO;

- Ameritas qualifies as a group purchaser or deemed group purchaser under the statute;

- Ameritas did not issue statutorily compliant benefit cards disclosing the DenteMax provider network or any other discount network; and

- Ameritas is liable for statutory damages under La. R.S. 40:2203.1(G) for violations of Subsections A, B, C, D, and/or F of Section 2203.1;

3. **Remand** with instructions that the Providers be granted leave to amend their pleadings to add claims or defendants based on intervening changes in law and the post-remand record; and for further proceedings; and

4. **Award** such other and further relief as this Court deems just and appropriate.


SUBMITTED BY:


*/s/ Kristin M. Lausten*
Kristin M. Lausten
(AR Bar No. 2011030)
(LA Bar No. 35510)
The Lausten Group, LLC
419 Carondelet Street, Suite 305
New Orleans, LA 70131
klausten@thelaustengroup.com
*Counsel for Plaintiffs-Appellants*
*Mark Wightman, D.D.S.,*
*Courtney Wightman, D.D.S., and*
*Wightman Family Dental, L.L.C*

## CERTIFICATE OF SERVICE

This is to certify that the foregoing instrument has been served via U.S.P.S. first-class mail and/ or electronically on all known counsel of record and has been transmitted to the Clerk of the Court for filing.

6/26/2025

*/s/ Kristin M. Lausten*
Kristin M. Lausten

# <u>CERTIFICATE OF COMPLIANCE</u>

With Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements

1. This document complies with the type-volume limit of <u>Fed. R. App. P. 32(a)(7)(B)</u> because, excluding the parts of the document exempted by <u>Fed. R. App. P. 32(f)</u> and <u>5th Cir. R. 32</u>

  ☒ this document contains 12,999 words, which is less than the 13,000-word limit permitted by <u>Fed. R. App. P. 32(a)(7)(B)(i)</u>; **or**

  ☐ this document uses a monospaced typeface and contains _____ lines of text, which is less than the 1,300-line limit permitted by <u>Fed. R. App. P. 32(a)(7)(B)(i)</u>.

2. This document complies with the typeface requirements of <u>Fed. R. App. P. 32(a)(5)</u> and the type-style requirements of <u>Fed. R. App. P. 32(a)(6)</u> because:

  ☒ this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 with a 14-point font named <u>Century Schoolbook</u> and footnotes in a 12-point font named <u>Century Schoolbook</u>; **or**

  ☐ this document has been prepared in a monospaced typeface using Microsoft Word 365 with ___ characters per inch which is less than the 102 characters per inch limit permitted by <u>Fed. R. App. P. 32(a)(5)(B)</u>.

*/s/ Kristin M. Lausten*
Kristin M. Lausten

*Counsel for Plaintiffs-Appellants*
*Mark Wightman, Courtney*
*Wightman and Wightman Family*
*Dental, LLC*

6/26/2025